order to purchase 1.5 million shares of Dean Foods stock in the WALTERS Accounts, of which only approximately 800,000 shares were purchased on May 8, 2012. On or about May 9, 2012, prior to the open of the stock market, WALTERS called Broker-2. Later that morning, another approximately 400,000 shares of Dean Foods stock were purchased in the WALTERS Accounts.

31. Following the May 9, 2012 Earnings Call, Dean Foods stock ended the trading day at $14.15 per share, up from a share price of $12.72 at the close of trading on the previous day. As a result of trading on the Inside Information, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, earned unrealized profits of approximately $2.2 million.

Dean Foods' August 7, 2012 Spinoff Announcement

32. On or about August 7, 2012, after the close of the stock market, Dean Foods publicly announced that the Company had filed a registration statement with the United States Securities and Exchange Commission ("SEC") for an IPO of common stock of WhiteWave (the "August 7, 2012 Spinoff Announcement"). The August 7, 2012 Spinoff Announcement also stated that Dean Foods would own at least 80 percent of WhiteWave common stock following the IPO and that Dean Foods would distribute its future shares of WhiteWave to Dean Foods stockholders no later

21

than 180 days after the completion of the IPO.  Prior to this announcement, and beginning in or about May 2012, Davis, in his capacity as a member of the Board, possessed Inside Information concerning the WhiteWave Spinoff before it was made public in the August 7, 2012 Spinoff Announcement.

33.  In the months prior to the August 7, 2012 Spinoff Announcement, Davis provided Inside Information to WILLIAM T. WALTERS, a/k/a "Billy," the defendant, about, among other things, the approval by the Board to pursue the WhiteWave Spinoff, the structure and valuation of the WhiteWave Spinoff, the expected timing of the WhiteWave Spinoff announcement, and the likelihood of the WhiteWave Spinoff's occurrence.  WALTERS used this Inside Information to execute and cause to be executed securities transactions in Dean Foods stock:

a.  On or about July 9, 2012, WALTERS called Davis and they spoke for approximately two minutes.  On or about July 10, 2012, WALTERS and Davis exchanged text messages.  On or about July 13, 2012, WALTERS placed four telephone calls to Davis.  That day, WALTERS purchased 800,000 shares of Dean Foods stock.

b.  On or about July 16, 2012, after several attempts by WALTERS to speak with Davis, Davis returned WALTERS'

telephone call, and they spoke for more than two minutes.  On or about July 17 and 18, 2012, WALTERS purchased one million shares of Dean Foods stock.

c.    On or about Saturday, July 21, 2012, WALTERS called Davis and they spoke for approximately two minutes.  On or about Monday, July 23 and Tuesday, July 24, 2012, WALTERS purchased an additional approximately 900,000 shares of Dean Foods.

d.    On or about July 30 and 31, 2012, Davis visited WALTERS in San Diego, California.  During this visit, Davis confirmed to WALTERS that the WhiteWave Spinoff would be announced on August 7, 2012.  On or about July 31, 2012, WALTERS purchased 100,000 shares of Dean Foods, increasing his total position in Dean Foods stock to approximately four million shares.

34.  On or about Friday, July 27, 2012, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, placed a telephone call to an individual who owed a gambling debt to WALTERS ("Individual-2").  WALTERS and Individual-2 spoke for approximately one minute.  WALTERS and Individual-2 spoke on the telephone twice more that day, and they exchanged text messages the following day, Saturday, July 28, 2012.  On or about Monday,

July 30, 2012, WALTERS and Individual-2 exchanged additional text messages. On or about July 30 and 31, 2012, Individual-2 purchased approximately 240,000 shares of Dean Foods stock across three separate brokerage accounts. Individual-2 had never before traded in Dean Foods stock.

35. Following the August 7, 2012 Spinoff Announcement, Dean Foods' stock price increased by approximately 40 percent and closed the trading day on August 8, 2012 at $17.46 per share. As a result of trading on the Inside Information in May and July 2012, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, earned unrealized profits of approximately $17.1 million.

36. On or about August 8, 2012, Individual-2 sold all of Individual-2's Dean Foods shares for a profit of approximately $931,000.

### WhiteWave's October 17, 2012 Registration Statement

37. On or about October 17, 2012, prior to the open of the stock market, WhiteWave filed with the SEC an amended S-1 registration statement that, for the first time, publicly announced that the IPO would issue up to 23 million shares of WhiteWave common stock at a price range of $14 to $16 per share (the "October 17, 2012 Registration Statement"). Davis, in his

24

capacity as a member of the Board, possessed Inside Information concerning the WhiteWave IPO before it was made public in the October 17, 2012 Registration Statement, which Davis provided to WILLIAM T. WALTERS, a/k/a "Billy," the defendant, prior to October 17, 2012.  WALTERS used this Inside Information to execute securities transactions in Dean Foods stock:

a.   On or about September 17, 18, and 19, 2012, WALTERS purchased 500,000 shares of Dean Foods stock.  On or about October 9 and 11, 2012, WALTERS purchased an additional approximately 316,000 shares of Dean Foods stock.

38.   Following the October 17, 2012 Registration Statement, Dean Foods stock price increased from $15.04 to $16.96 at the end of the trading day.  As a result of trading on the Inside Information, WALTERS T. WALTERS, a/k/a "Billy," the defendant, earned unrealized profits of approximately $887,000.

39.   On or about October 25, 2012, WhiteWave announced that the IPO would price its common stock at $17 per share, above its previously announced range of $14 to $16 per share. At the close of trading on October 25, 2012, the share price of Dean Foods rose to $18.79 per share.  At that point, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, held more than 5.3 million shares of Dean Foods stock that was worth a total of

approximately $100 million, at least $90.6 million of which WALTERS had purchased on the basis of Inside Information.

### Dean Foods' February 13, 2013 Announcement

40. On or about February 13, 2013, prior to the open of the stock market, Dean Foods publicly announced that the Company had lost a significant amount of business from one of its largest customers ("Customer-1") and adjusted guidance for 2013 accordingly (the "February 13, 2013 Announcement"). Davis, in his capacity as a member of the Board, possessed Inside Information concerning the loss of business from Customer-1 before it was made public in the February 13, 2013 Announcement, which Inside Information Davis provided to WILLIAM T. WALTERS, a/k/a "Billy," the defendant, prior to February 13, 2013. WALTERS used this Inside Information to execute securities trades in Dean Foods stock. For example, on or about February 1, 2013, WALTERS sold approximately one million shares of Dean Foods, which constituted approximately 34 percent of daily trading volume in the stock.

41. Following the February 13, 2013 Announcement, Dean Foods stock closed the trading day at $16.70 per share, down from the previous day's closing price of $18.39 per share. By trading on the Inside Information, WILLIAM T. WALTERS, a/k/a

"Billy," the defendant, avoided losses of approximately $1.6 million.

### WALTERS' Sales of Dean Foods and WhiteWave Stock

42.   On or about May 23, 2013, Dean Foods provided its shareholders with a dividend of WhiteWave stock (the "May 23 Dividend").  After selling approximately one million shares of Dean Foods stock on or about February 1, 2013, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, held the remainder of his approximately 4.3 million shares of Dean Foods stock through the May 23 Dividend, most of which were purchased using Inside Information, as set forth above.  On or about May 24, 2013, WALTERS received a distribution of approximately 2,672,636 shares of WhiteWave stock, which were worth approximately $32 million.  After the May 23 Dividend was complete, WALTERS' shares of Dean Foods stock were worth approximately $43 million. In or about July and August 2013, WALTERS sold all of his remaining shares of Dean Foods and WhiteWave stock.  In total, as a result of selling his approximately 5.3 million shares of Dean Foods stock, WALTERS received gross proceeds of approximately $110 million.

### **WALTERS' Insider Trading in Darden**

43.   On or about October 9, 2013, a national newspaper

27

("Newspaper-1") published an article about a significant investment by Investment Firm A and other investors with the intent of pushing Darden to separate into two companies (the "October 9, 2013 Article").  In or about early August 2013, Davis received an investment plan related to Darden from Investment Firm A pursuant to a confidentiality agreement that Davis signed (the "Darden Investment Plan").  The Darden Investment Plan outlined Investment Firm A's desire to separate, or spin off, one or more of Darden's restaurant chains to unlock additional value in the stock.

44.  After receiving the Darden Investment Plan and discussing it further with representatives of Investment Firm A, Davis provided the Darden Inside Information to WILLIAM T. WALTERS, a/k/a "Billy," the defendant.  On or about August 20 and 21, 2013, WALTERS used the Darden Inside Information to purchase approximately 625,000 shares of Darden at a total cost of approximately $30 million.

45.  At the close of trading on October 9, 2013, Darden's stock price closed at $49.57 per share, up from $46.28 per share at the close of trading the previous day.  As a result of trading on the Darden Inside Information, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, earned unrealized profits of

28

approximately $1 million.  On or about December 19, 2013, WALTERS sold his shares of Darden stock for gross proceeds of approximately $1 million.

## WALTERS' Loans to Davis

46.  During the course of the scheme charged herein, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, provided two loans, the April 2010 Loan and the November 2011 Loan, to Davis totaling nearly $1 million.  From in or about January 2012, when WALTERS assumed the April 2010 Loan from Individual-1, until June 2014, Davis did not make a single payment of interest or principal on either loan, nor did WALTERS ever request any payment from Davis.  During this period of time, Davis repeatedly provided WALTERS with material, non-public information, which WALTERS used to make profitable securities trades, as set forth above.  In June 2014, shortly after Newspaper-1 revealed the existence of a law enforcement investigation into WALTERS' timely purchases and sales of stock, Davis made his first payment to WALTERS on the loans.  In June 2014, Davis owed approximately $1.1 million in principal and interest to WALTERS on the two loans.

## Means And Methods Of The Conspiracy

47.  Among the means and methods by which WILLIAM T.

29

WALTERS, a/k/a "Billy," the defendant, Davis, and others known and unknown, would and did carry out the conspiracy were the following:

a.    WALTERS solicited and received Inside Information about Dean Foods from Davis that WALTERS knew had been disclosed by Davis in breach of Davis's duty of confidentiality.  WALTERS used the Inside Information to execute profitable trades in the securities of Dean Foods.

b.    WALTERS also solicited and received the Darden Inside Information from Davis that WALTERS knew had been disclosed by Davis in breach of Davis's duty of confidentiality. WALTERS used the Darden Inside Information to execute profitable trades in the securities of Darden.

c.    In order to receive the Inside Information about Dean Foods without detection by law enforcement authorities, WALTERS provided Davis with a prepaid cellular telephone for Davis to use when disclosing Inside Information to WALTERS.  WALTERS further instructed Davis to use code words when discussing Inside Information with WALTERS.  For example, WALTERS told Davis to use the phrase "Dallas Cowboys" to refer to Dean Foods.

d.    In exchange for receiving material, non-

30

public information, WALTERS provided Davis with pecuniary

benefits in the form of business opportunities, investment

capital, and two loans that were never fully repaid.

## Statutory Allegations

48. From at least in or about 2008 through in or

about 2014, in the Southern District of New York and elsewhere,

WILLIAM T. WALTERS, a/k/a "Billy," the defendant, Davis, and

others known and unknown, willfully and knowingly did combine,

conspire, confederate and agree together and with each other to

commit an offense against the United States, to wit, securities

fraud, in violation of Title 15, United States Code, Sections

78j(b) and 78ff, and Title 17, Code of Federal Regulations,

Sections 240.10b5 and 240.10b5-2.

49. It was a part and object of the conspiracy that

WILLIAM T. WALTERS, a/k/a "Billy," the defendant, Davis, and

others known and unknown, willfully and knowingly, directly and

indirectly, by the use of means and instrumentalities of

interstate commerce, and of the mails, and of facilities of

national securities exchanges, would and did use and employ, in

connection with the purchase and sale of securities,

manipulative and deceptive devices and contrivances in violation

of Title 17, Code of Federal Regulations, Sections 240.10b5 and

31

240.10b5-2, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

## Overt Acts

50.    In furtherance of the conspiracy and to effect the illegal object thereof, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, and his co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about April 9, 2010, WALTERS met with Davis in Las Vegas, Nevada, at which meeting WALTERS agreed to provide Davis with a loan of $625,000.  At the same meeting, Davis provided WALTERS with Inside Information about Dean Foods.

b.    On or about May 8, 2012, WALTERS directed Broker-2, who was located in New York, New York, to purchase 1.5 million shares of Dean Foods stock for the WALTERS Accounts.

c.    On or about July 13, 2012, WALTERS directed

32

Broker-2, who was located in New York, New York, to purchase 800,000 shares of Dean Foods stock for the WALTERS Accounts.

       d.   On or about July 30 and 31, 2012, Davis visited WALTERS in San Diego, California and stayed at WALTERS' home.  During this visit, Davis provided WALTERS with Inside Information about Dean Foods.

       e.   On or about September 17, 2012, WALTERS directed Broker-2, who was located in New York, New York, to purchase 175,000 shares of Dean Foods for the WALTERS Accounts.

       f.   On or about February 1, 2013, WALTERS directed Broker-2, who was located in New York, New York, to sell one million shares of Dean Foods.

       g.   On or about August 20, 2013, WALTERS directed Broker-2, who was located in New York, New York, to purchase 535,200 shares of Darden.

      (Title 18, United States Code, Section 371.)

### COUNT TWO

(Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

51.  The allegations contained in paragraphs 1 through 47 and 50 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

33

52.   From at least in or about 2008 through in or about 2014, in the Southern District of New York and elsewhere, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, Davis, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

53.   It was a part and an object of the conspiracy that WILLIAM T. WALTERS, a/k/a "Billy," the defendant, Davis, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

34

## COUNTS THREE THROUGH SIX

(Securities Fraud)

The Grand Jury further charges:

54.   The allegations contained in Paragraphs 1 through 47 and 50 are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

55.   On or about the dates set forth below, in the Southern District of New York and elsewhere, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Sections 240.10b5 and 240.10b5-2, by: (a) employing devices, schemes and artifices to defraud; (b) making, and causing others to make, untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons,

35

to wit, on the basis of material, non-public information that Davis disclosed to WALTERS in violation of Davis's fiduciary and other duties of trust and confidentiality, and in exchange for pecuniary benefits that WALTERS provided to Davis, WALTERS executed and caused to be executed the securities transactions listed below:

| Count | Date | Transaction |
|-------|------|-------------|
| 3 | May 8 and 9, 2012 | Purchase of approximately 1.2 million shares of Dean Foods |
| 4 | July 13, 17, 18, 23, 24 and 31, 2012 | Purchase of approximately 2.8 million shares of Dean Foods |
| 5 | September 17, 18, 19, and October 9 and 11, 2012 | Purchase of approximately 815,953 shares of Dean Foods |
| 6 | August 20 and 21, 2013 | Purchase of approximately 625,000 shares of Darden |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b5 and
240.10b5-2; and Title 18, United States Code, Section 2.)

### COUNTS SEVEN THROUGH TEN

(Wire Fraud)

The Grand Jury further charges:

56.    The allegations contained in Paragraphs 1 through 47 and 50 are hereby repeated, realleged, and incorporated by

36

reference, as if fully set forth herein.

57.   On or about the dates set forth below, in the Southern District of New York and elsewhere, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, through the use of interstate wires, including interstate and international telephone calls, WALTERS participated in a scheme to defraud Dean Foods, its shareholders, and Investment Firm A by using material, non-public information obtained from Davis, who owed fiduciary and other duties of trust and confidentiality to Dean Foods and Investment Firm A, to execute the securities transactions listed below:

| Count | Date | Transaction |
|-------|------|-------------|
| 7 | May 8 and 9, 2012 | Purchase of approximately 1.2 million shares of Dean Foods |
| 8 | July 13, 17, 18, 23, 24 and 31, 2012 | Purchase of approximately 2.8 million shares of Dean Foods |
| 9 | September 17, 18, 19, and October 9 and 11, 2012 | Purchase of approximately 815,953 shares of Dean Foods |
| 10 | August 20 and 21, 2013 | Purchase of approximately 625,000 shares of Darden |

(Title 18, United States Code, Sections 1343 and 2.)

### FORFEITURE ALLEGATION

58.    As a result of committing one or more of the foregoing offenses alleged in Counts One through Ten of this Indictment, WILLIAM T. WALTERS, a/k/a "Billy," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Ten of this Indictment.

### Substitute Assets Provision

59.    If any of the above-described forfeitable

38

property, as a result of any act or omission of the defendant:

        a.   cannot be located upon the exercise of due diligence;

        b.   has been transferred or sold to, or deposited with, a third party;

        c.   has been placed beyond the jurisdiction of the court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

        (Title 18, United States Code, Sections 981;
        Title 21, United States Code, Section 853; and
        Title 28, United States Code, Section 2461.)

FOREPERSON

_Preet Bharara_

PREET BHARARA
United States Attorney

39

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

v.

**WILLIAM T. WALTERS,**
**a/k/a "Billy,"**

Defendant.

## INDICTMENT

S1 16 Cr. 338 (PKC)

(18 U.S.C. §§ 2, 371, 981, 1343, 1349;
15 U.S.C. §§ 78j(b) & 78ff;
21 U.S.C. § 853; 28 U.S.C. § 2461;
17 CFR §§ 240.10b-5 & 240.10b5-2.)

PREET BHARARA
United States Attorney

Foreperson