UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                  :

           - v. -                                        :         DECLARATION

WILLIAM T. WALTERS,                        :         S1 16 Cr. 338 (PKC)
    a/k/a "Billy,"                               :

           Defendant.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        TELEMACHUS P. KASULIS hereby declares under penalty of perjury:

        1.       I am an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Southern District of New York ("USAO"). My duties are to investigate and, where warranted, prosecute persons for violations of the criminal laws of the United States.

        2.       As part of my official duties, in 2013 and 2014, I was the principal AUSA responsible for the investigation of William T. Walters, a/k/a "Billy," Thomas C. Davis, Philip Mickelson, and Carl Icahn for potential violations of the federal laws against insider trading. After I ceased to be the principal AUSA responsible for the investigation, I continued to supervise the investigation and this prosecution as the Deputy Chief of the Office's Securities and Commodities Fraud Task Force.

        3.       The USAO was assisted in the investigation by members of the Federal Bureau of Investigation ("FBI"). During 2013 and 2014, the FBI case agent was Special Agent Matthew A. Thoresen. During 2013 and 2014, the San Francisco Regional Office of the Securities and Exchange Commission ("SEC") also conducted a parallel regulatory investigation

of Walters, Davis, Mickelson, and Icahn in connection with potential civil violations of the federal laws against insider trading.

### The Investigation

4. The SEC began their investigation into potential insider trading by Walters and others in at least August 2011, in connection with their examination of suspiciously-timed profitable trades by Walters in The Clorox Company. In or about September 2011, the USAO opened a parallel criminal investigation. Those investigations soon widened to include potential insider trading by Walters in a number of different stocks, particularly after the Financial Industry Regulatory Authority ("FINRA") referred to the SEC for investigation in or about April 2013 a pattern of suspiciously-timed and profitable trades by Walters in Dean Foods, Inc. As part of those parallel investigations, the SEC and the USAO learned that Mickelson had also engaged in suspiciously-timed and profitable trades in Dean Foods shortly after communicating with Walters.

5. During the course of the parallel investigations, both the SEC and the USAO obtained a number of relevant documents, including phone records and trading records for the principal subjects of the investigation. In so doing, the SEC used its investigative subpoena power while the USAO used grand jury subpoenas to obtain some records. The SEC also typically provided documents it had obtained to the USAO pursuant to the granting of a standard access request by the USAO, including documents and other materials obtained from XO Communications which the USAO did not subpoena. In addition, pursuant to the access request by the USAO, the SEC also provided to the USAO records related to 2012 trading in Dean Foods by Mickelson and Walters prior to the publication of the media reports discussed below. The USAO ultimately obtained duplicative records for Mickelson via grand jury

subpoena before the publication of the media reports, and duplicative records for Walters via grand jury subpoena after the publication of the media reports.

6. On August 25, 2013, agents from the FBI interviewed Mickelson. On August 26, 2013, Mickelson called the FBI agents back to clarify a few of his statements from the day before. On September 27, 2013, Mickelson called the FBI agents to confirm that it would not be a problem for him to meet Walters for dinner that night.

The Wiretap





### The First Media Contact

11. On or about May 8, 2014, the USAO learned for the first time that the *Wall Street Journal* was considering publishing an article about our investigation into potential insider trading by Walters and others. This was a serious negative development for the investigation because (a) the public announcement of our investigation might cause Walters or others to avoid talking on the phone about past or future insider trading for fear of a wiretap, and (b) any approach of the principal subjects of the investigation by FBI agents would likely be less successful if the subjects knew that law enforcement would be coming to interview them (including by allowing for the possibility that the subjects would work to conform their stories beforehand).

12. On or about May 13, 2014, the USAO learned from the FBI press office that the *Wall Street Journal* would not be able to publish a story about our investigation until May 22, 2014 at the earliest, and that it might well be later. As there was no need to immediately approach the subjects ahead of an indeterminate outing of our investigation, we

decided not to approach prospective witnesses at that time. I learned from my supervisor at the USAO that the FBI investigative team had made clear that they wanted to keep the investigation covert while the wiretap was up and would consider immediate approaches only as a measure of last resort. The shared USAO/FBI view was that the *Wall Street Journal* had a number of facts wrong in their potential story and would not be in a position to publish in the near future.

The Wiretap Renewal and the Media Reports



14. On or about May 27, 2014, however, I learned that the SEC had just received a call from a reporter at the *New York Times*, which was also considering publishing an article about our investigation into potential insider trading by Walters and others. Realizing that there was virtually no chance that both papers would hold off on their stories for a significant period of time, on or about May 27, 2014, the USAO and the FBI made plans to conduct approaches of Phil Mickelson and Thomas Davis. Those approaches were conducted on May 29, 2014. Davis denied wrongdoing. Mickelson also denied wrongdoing and referred the agents to

his counsel.  The next day, May 30, 2014, both the *Wall Street Journal* and the *New York Times* ran their stories.



17.     I am aware of the additional media stories about this investigation published in 2014.  At no time did I disclose any information presented in this case to the grand jury (or any information related to the investigation at all) to any member of the press.  I also spoke with Special Agent Thoresen, who confirmed that at no time did he disclose any

6

information presented in this case to the grand jury (or any information related to the investigation at all) to any member of the press.

### Thomas Davis

18. In early 2016, Davis informed the Government through counsel that he wanted to cooperate. In the course of his proffering, the Government learned for the first time that (a) Davis had been using a prepaid cellphone to communicate with Walters during the course of the conspiracy, and (b) Davis had unfortunately disposed of the cellphone after the FBI approached him shortly before the media reporting on the investigation.

19. After Davis had proffered on a number of occasions and outlined the nature of the insider trading scheme in detail, the prosecutors assigned to the matter played for Davis for the first time recorded calls obtained pursuant to the court-authorized wiretap. At no time prior to that did prosecutors relate to Davis or his counsel that there had been a wiretap used in connection with the investigation.

### The Indictment

20. On May 19, 2016, a grand jury sitting in this District returned an indictment against Walters, charging him with several crimes in connection with his insider trading activity. The testimony on that day was the first testimony before the grand jury in the course of this investigation.

I declare the foregoing under penalty of perjury under the laws of the United States and the State of New York.

Dated:     New York, New York
           October 21, 2016

                                          _____
                                          TELEMACHUS P. KASULIS
                                          Assistant United States Attorney