UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────── x
                                         :
UNITED STATES OF AMERICA,                :
                                         :     **ECF CASE**
         -v-                             :
                                         :     S1 16 Cr. 338 (PKC)
WILLIAM T. WALTERS                       :
    a/k/a "Billy,"                       :
                                         :
         *Defendant*.                    :
                                         :
──────────────────────────────────────── x


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT WILLIAM T. WALTERS' MOTION *IN LIMINE***


                Barry H. Berke
                Paul H. Schoeman

                KRAMER LEVIN NAFTALIS & FRANKEL LLP
                1177 Avenue of the Americas
                New York, New York 10036
                (212) 715-9100

                *Counsel for Defendant William T. Walters*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................1

ARGUMENT ............................................................................................................................5

I. It is Far Too Late for the Government to Expand the Scope of the Charged Conspiracy to Include Other Stocks ...................................................................5

II. The Government Has Not Provided the Required Notice under Rule 404(b) and its Proposed Evidence Fails the Balancing Test of Rule 403 ...................................8

III. Admission of Uncharged Stock Transactions Will Unduly Lengthen the Trial and Confuse the Jury ...............................................................................................13

CONCLUSION ......................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Berkovich v. Hicks*,
  922 F.2d 1018 (2d Cir. 1991)................................................................................................7

*People v. Zackowitz*,
  254 N.Y. 192 (1930) (Cardozo, C.J.)....................................................................................8

*Ricketts v. City of Hartford*,
  74 F.3d 1397 (2d Cir. 1996)................................................................................................14

*United States v. Aboumoussallem*,
  726 F.2d 906 (2d Cir. 1984)................................................................................................15

*United States. v. Cushing*,
  No. S3 00 CR. 1098 (WHP), 2002 WL 1339101 (S.D.N.Y. June 18, 2002) ..........................8

*United States v. Daugerdas*,
  09 CR 581 (Feb. 16, 2011), ECF No. 305 .........................................................................13

*United States v. DiCarlo*,
  131 F. Supp. 2d 537 (S.D.N.Y. 2001)..............................................................................9, 10

*United States v. Downing*,
  297 F.3d 52 (2d Cir. 2002)..................................................................................................10

*United States v. Fasciana*,
  226 F. Supp. 2d 445 (S.D.N.Y. 2002)..................................................................................13

*United States v. Gardell*,
  No. S4 00 CR. 632 (WHP), 2001 WL 1135948 (S.D.N.Y. Sept. 25, 2001).................12, 14

*United States v. Gasparik*,
  141 F. Supp. 2d 361 (S.D.N.Y. 2001)....................................................................................9

*United States v. Germain*,
  33 Fed. App'x 565 (2d. Cir. 2002)........................................................................................6

*United States v. Heatley*,
  994 F. Supp. 483 (S.D.N.Y. 1998).........................................................................................9

*United States v. Kahn*,
  472 F.2d 272 (2d Cir. 1973)................................................................................................13

*United States v. Levy*,
    731 F.2d 997 (2d Cir. 1984) .................................................................................................. 9

*United States v. Murray*,
    297 F.2d 812 (2d Cir. 1962) .................................................................................................. 6

*United States v. Rajaratnam*,
    No. S1 13 Cr. 211 (NRB), 2014 WL 2696568 (S.D.N.Y. June 10, 2014) ........................... 3, 7

*United States v. Schatzle*,
    901 F.2d 252 (2d Cir. 1990) ............................................................................................ 13, 14

*United States v. Scott*,
    677 F.3d 72 (2d Cir. 2012) .................................................................................................... 7

*United States v. Soliman*,
    No. 06 CR. 236A, 2008 WL 4490623 (W.D.N.Y. Sept. 30, 2008) ...................................... 12

*United States v. Spinner*,
    152 F.3d 950 (D.C. Cir. 1998) ............................................................................................. 12

*United States v. Stein*,
    521 F. Supp. 2d 266 (S.D.N.Y. 2007) .................................................................................. 14

## Other Authorities

Fed. R. Evid. 403 ............................................................................................... 7, 8, 13, 15

Fed. R. Evid. 404(b) ................................................................................................. *passim*

## INTRODUCTION

Mr. Walters moves *in limine* to preclude the government from introducing at trial purported "other acts" evidence pursuant to Fed. R. Evid. 404(b). The proposed evidence – which relates to alleged inside information and trading concerning four additional stocks that have never before been mentioned as part of the charges in this case (Apple, Clorox, Affirmative Insurance and Westwood Holdings) – is too late and not specific enough for the defense to adequately prepare to meet it. Its relevance is dubious and speculative at best, and is far outweighed by its prejudicial impact. If admitted, the proposed 404(b) evidence will turn a trial about alleged illegal trading in the stock of two companies (Dean Foods and Darden) over a four-year period into a sprawling and speculative exploration of whether Mr. Walters may have received illegal information from other unnamed individuals and whether he may have illegally traded in other stocks over more than a decade. For the reasons set forth below, the government should be precluded from improperly attempting to smear Mr. Walters in front of the jury with vague, unsubstantiated, and belatedly disclosed evidence of alleged other "bad acts."

## FACTUAL BACKGROUND

On May 19, 2016, the government unsealed the indictment against Mr. Walters, charging him with ten counts arising from his trading in the securities of Dean Foods and Darden Restaurants based on alleged illegal inside information received from Tom Davis between 2008 and 2014. The indictment specifically identifies the stocks of only these two companies – Dean Foods and Darden Restaurants – as being part of the charged conspiracy. Within two weeks of the unsealing of the indictment, on May 31, 2016, Mr. Walters sent letters to the government requesting a bill of particulars and discovery, including notice of evidence the government intended to offer under Federal Rule of Evidence 404(b). Both the request for particulars and the

request for notice under Rule 404(b) were intended to elicit from the government exactly what trading activity the government would allege at trial was improper so as to permit the defense to prepare and avoid surprise.  On June 7, 2016, the government responded in a two-paragraph letter, declining to provide any particulars and indicating only that it was "aware of its disclosure obligations."  Letter from United States Attorney's Office to Barry H. Berke, Esq., *United States v. Walters*, S1 16 Cr. 338 (PKC) (June 7, 2016) (attached hereto as Ex. A to the Declaration of Paul H. Schoeman, Esq. ("Schoeman Decl.")).

In our ensuing motion for a bill of particulars, filed on September 23, 2016, we pointed out that the trading records produced by the government in discovery included records going back 20 years and covering over 90 securities, as well as telephone records for 60 numbers.  *See* Defendant's Memorandum of Law in Support of Defendant Williams T. Walters's Pretrial Motion for a Bill of Particulars ("Walters Mem."), S1 16 Cr. 338 (PKC) (Sept. 23, 2016), ECF No. 42 at 3-4.  We further observed that nothing in the discovery permitted the defense to determine when the alleged conspiracy started, what purportedly material non-public information Mr. Walters had obtained, what specific trades the government contends were unlawful, and other critical details that the defense needed to know in order to be able to prepare for trial and avoid being unfairly surprised.  *Id.*

Our motion for a bill of particulars made it clear to the government why the defense needed to know with specificity what trades the government will contend at trial were based on receipt of illegal inside information.  We quoted Judge Holwell, who explained:

> The merits of such a charge depend heavily on the facts and context.  A defendant might argue that the information he sought to obtain was not material, or that it was already public at the time he tried to get it.  But he can only do that if he knows what the information *is* and when it was conveyed.

*United States v. Rajaratnam*, No. S1 13 Cr. 211 (NRB), 2014 WL 2696568, at *2 (S.D.N.Y. June 10, 2014) (emphasis in original).  We further explained,

> [T]he government's perfunctory response to our request for particulars references "the discovery" that has now been produced, and that discovery includes trading by Mr. Walters – near constant trading over many years, including over 1,000 trades in approximately 90 securities between 2008 and 2014. . .Without a bill of particulars, Mr. Walters would have to analyze and defend not only the trading activity specifically identified in the Indictment, but also all of his trades that the government has produced with regards to Dean Foods and other stocks, as well as trades that others directed.  Forcing Mr. Walters to prepare to explain twenty years of his own trading activity as well as the circumstances surrounding others' trades is unrealistic and impermissibly shifts the burden of proof to Mr. Walters.

(Walters Mem. at 13-14).  The government opposed defendant's motion, declined to disclose any additional information, and repeatedly claimed that the indictment and the voluminous discovery provided a clear "road map" of the government's case.  *See* Government's Memorandum of Law in Opposition to Defendant's Motion for a Bill of Particulars, *Brady* Material, and a Hearing, S1 16 Cr. 338 (PKC) (Sept. 23, 2016), ECF No. 43 at 1, 12.

At the motion argument on December 2, 2016, the government again resisted providing additional information to the defense on the ground that everything we needed to know was clear from the indictment: "There are absolutely no surprises here.  They know from the indictment itself the nature of the inside information, the timing of the inside information, and when it was relayed by whom to the defendant.  They know the actual specific trades that were provided."  Transcript of Hearing ("Tr.") at 15-16, *United States v. Walters*, S1 16 Cr. 338 (PKC) (S.D.N.Y. Dec. 2, 2016).  In other words, the government lulled the defense into believing that all of the relevant stocks at issue had been disclosed and there would be no "surprises."

3

In addition, the Court asked the government to clarify whether the phrase "at least in or about 2008" should be read to mean "in or about 2008" with respect to when the conspiracy is alleged to have started. (Tr. 18-19). The Court asked: "So can I take your representation to be that where the indictment uses the phraseology 'at least in or about' followed by a date, that should be read as in or about that date?" The government replied "As of this time, yes." When the defense began to take issue with the government's effort to preserve room for maneuver, the Court observed, "Representations like that have consequences." (Tr. 19-20).

The Court also asked the government, "If I read this indictment, do I know the entire universe of trades that you contend were the unlawful tipping of material non-public inside information?" (Tr. 26). When the government waffled, the Court addressed the issue by requiring the government to produce a bill of particulars:

> THE COURT: All right. I'll tell you what. I'm going to grant the motion for a bill of particulars, and by January 13, 2017, you are going to identify all trades that you contend are unlawful on one or more counts of the indictment. That may require you to identify it as the trade of X or the trade of Y, just by reason of identifying the trade. It's a necessary consequence.

(Tr. 27). The government's January 13, 2017 bill of particulars disclosed that in addition to the trades previously identified in the indictment, the government would contend at trial that nine other trades in Dean Foods stock, made by Mr. Walters and others, were unlawful. *See* Letter from United States Attorney's Office, S1 16 Cr. 338 (PKC) (Jan. 13, 2017), ECF No. 70 at 2.

Against this contextual backdrop, the government provided Rule 404(b) notice on January 20, 2017 – the last day permitted by the schedule set by the Court on July 29, 2016. With almost no detail, the government stated that it may introduce evidence at trial of: (1) trading by Mr. Walters in the securities of The Clorox Company in 2011 and Apple Inc. in 2013 and telephone calls "the defendant received from individuals in possession of confidential

4

information related to those securities" as well as evidence of relevant public announcements; (2) evidence that Tom Davis, the government's cooperating witness, provided confidential information to Mr. Walters about Affirmative Insurance dating back to 2004 and continuing into September 2013; and (3) evidence that a purported co-conspirator (but not Mr. Walters) traded in the securities of Westwood Holdings in 2010 at the time when Davis served on the board of Westwood.  *See* Letter from United States Attorney's Office to Barry H. Berke, Esq., *United States v. Walters*, S1 16 Cr. 338 (PKC) (Jan. 20, 2017) ("Jan. 20, 2017 Letter") (Schoeman Decl. Ex. B).  These four securities – Clorox, Apple, Affirmative Insurance and Westwood Holdings – were not previously mentioned in way in the indictment, the motion papers, court conferences or in the bill of particulars.

With respect to Mr. Walters' trading in Affirmative Insurance and the co-conspirator's trading in Westwood, the government indicates that it will seek to admit the evidence "as direct evidence" of the crimes charged in the indictment and/or as "background to the conspiracy as well as to explain the criminal relationship between Walters and Davis," but claims such evidence is included in its 404(b) notice "out of an abundance of caution."  *Id.* at 3.

**ARGUMENT**

**I.     It is Far Too Late for the Government to Expand the Scope of the Charged Conspiracy to Include Other Stocks**

The government's attempt to give notice that trading in Affirmative Insurance is "direct evidence" of the crimes charged in the indictment or as "background" to those crimes comes as a stunning surprise in light of the government's prior statements about the scope of trading activity falling within the charged conspiracy, the government's representations to the Court that the trades in companies it was claiming were part of the conspiracy was fully disclosed in the indictment (which only disclosed Dean Foods and Darden Restaurants), the

5

government's reassurance to the Court and the defense that "there are absolutely no surprises here," and the Court's order that the government particularize trading that the government would contend was "unlawful on one or more counts of the indictment." (Tr. 27).

If the government intends to contend at trial that any of Mr. Walters' trades in Affirmative Insurance stock were based on tips of inside information received from Mr. Davis, it was incumbent on the government to provide detailed notice, either in the indictment or in a bill of particulars. *See United States v. Germain*, 33 Fed. App'x 565, 566 (2d. Cir. 2002) ("Once the government has responded with a bill of particulars, it is 'strictly limited to proving what it has set forth in it.'") (quoting *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963)); *United States v. Murray*, 297 F.2d 812, 819 (2d Cir. 1962) (same). For the reasons previously stated in connection with our prior motion for particulars and as required by the Court's order, the government was required to specifically disclose Affirmative Insurance and, at the very least, identify the specific trades it will contend were unlawful. Here, we estimate that Mr. Walters traded the stock of Affirmative Insurance over 200 times. As of now, we have no idea what trades the government will contend were unlawful, what purportedly inside information was conveyed to Mr. Walters by Mr. Davis, or when it was conveyed. Moreover, contrary to its specific and direct representation to the Court that the charged conspiracies began in or about 2008, the government is now indicating that trading activity going back to 2004 may be part of the conspiracy.

The government has, thus, been sandbagging us the whole time – intending to try to double the number of trades at issue and double the length of the conspiracy. The information about Affirmative Insurance comes from the government's cooperating witness, who has been cooperating since before the indictment was returned in May 2016, which means that the

6

government has been in possession of this information from the outset, but only now purports to give "notice" despite the defense's repeated requests, knowing that we no longer have sufficient time to analyze all of the trading, the details of the stock, and the public information available, and complete all the other work necessary to prepare to meet the government's allegations at trial.

If what the government has in mind is not actually to prove that Mr. Walters engaged in illegal insider trading with respect to Affirmative Insurance, we have a different objection. To the extent the government's intention is to cast Mr. Walters in a negative light by having Mr. Davis testify vaguely that he provided confidential information to Mr. Walters with respect to Affirmative Insurance and then invite the jury to speculate whether any illegal trades followed, the testimony is improper because it has no probative value and will only confuse and distract the jury. *See* Fed. R. Evid. 403; *United States v. Rajaratnam*, No. S1 13 Cr. 211 (NRB), 2014 WL 2696568, at *3 (S.D.N.Y. June 10, 2014) (excluding evidence of uncharged trading activity in a company's stock pursuant to Rule 403 because "whatever minimal relevance defendant's trading activity in [the company] possesses is far outweighed by the risk of unfair prejudice, undue delay, and needless presentation of cumulative evidence").

The only purpose for introducing scurrilous but non-specific allegations is to encourage the jury to believe that Mr. Walters is a bad person or has a propensity to engage in insider trading, inferences that the rules of evidence strictly forbid. *See United States v. Scott*, 677 F.3d 72, 80 (2d Cir. 2012) (evidence that "goes to criminal propensity alone, [is] precisely what Rule 404(b) prohibits"); *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) ("Under Rule 404(b), wrongful acts evidence may not be admitted merely to show the defendant's propensity to commit the act in question."). Mr. Walters has a right to be tried on the charges at

hand — specified instances of alleged insider trading in Dean Foods and Darden Restaurants — and these charges alone. See *People v. Zackowitz*, 254 N.Y. 192, 199 (1930) (Cardozo, C.J.) (establishing rule against admission of propensity evidence, and noting unfairness where defendant, "[b]rought to answer a specific charge, and to defend himself against it, . . . was placed in a position where he had to defend himself against another, more general and sweeping").

As for the trading by a purported co-conspirator in the stock of Westwood Holdings, the government's "notice" does not suggest any reason why such trading would be improper or illegal. There is no indication that Mr. Davis will testify that he provided material non-public information, directly or indirectly, to this other person or Mr. Walters. Accordingly, we would have no objection to the admission of evidence regarding the purported co-conspirator's trading in Westwood Holdings, provided that the government does not contend that the trading was unlawful. If the government does contend that the trading was unlawful, we object for the same reasons and reserve the right to provide further objections after we receive notice of the government's evidence and the purpose for which it will be offered.

### II. The Government Has Not Provided the Required Notice under Rule 404(b) and its Proposed Evidence Fails the Balancing Test of Rule 403

The fatal flaw in the government's Rule 404(b) "notice" is that it continues the government's effort to avoid disclosing in any meaningful way what it intends to prove at trial and what relevance it ascribes to the evidence it seeks to admit. The problem for the government is that Rule 404(b) requires it to do both.

Under Rule 404(b), evidence of other crimes, wrongs or acts may be admissible if offered "for some other purpose than to show a probability that the defendant committed the alleged crime because he is a man of bad character." *United States. v. Cushing*, No. S3 00 CR.

8

1098 (WHP), 2002 WL 1339101, at *1 (S.D.N.Y. June 18, 2002) (citing *United States v. Germosen,* 139 F.3d 120, 127 (2d Cir. 1998)). In order to seek admission of other act evidence under the Rule, the government must first provide the defense with "reasonable notice" of its intent to do so. Fed. R. Evid. 404(b). As the Advisory Committee's Note to the 1991 amendment explains, the notice requirement is "intended to reduce surprise and promote early resolution on the issue of admissibility." Fed. R. Evid. 404(b) advisory committee's note (1991). Notice is also "necessary for a defendant to prepare for trial." *United States v. Heatley,* 994 F. Supp. 483, 491 (S.D.N.Y. 1998).

Courts in this Circuit routinely require the government to specifically identify Rule 404(b) material and "explain in detail the purposes for which the evidence is sought to be admitted." *United States v. Levy,* 731 F.2d 997, 1002 (2d Cir. 1984); *see also Heatley,* 994 F. Supp. at 491 (under Rule 404(b) government must provide "a full and particularized explanation of the grounds for admissibility"). A district court may determine that a particular "notice was not reasonable, either because of the lack of timeliness or completeness." Fed. R. Evid. 404(b) advisory committee's note (1991). Moreover, "[b]ecause the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides that the notice requirement has not been met." *Id.*; *see also United States v. Gasparik,* 141 F. Supp. 2d 361, 368 n.4 (S.D.N.Y. 2001) (precluding introduction of 404(b) material where the government failed to provide the required notice); *United States v. DiCarlo*, 131 F. Supp. 2d 537, 539 (S.D.N.Y. 2001) (precluding introduction of 404(b) material due to inadequacy of notice).

The government's effort to introduce evidence pursuant to Rule 404(b) fails at the first hurdle – notice – because the government's letter does not provide sufficient information

9

about what evidence the government intends to introduce and for what purpose. With respect to Clorox and Apple, the government has not identified specific trades or telephone calls by Mr. Walters, it has not identified who the "individuals in possession of confidential information" are, what the information was, or what duty was breached if the information was shared with Mr. Walters.

Moreover, the government has not proffered any legitimate evidentiary purpose that would be served by introducing this evidence. The 404(b) notice makes clear the government has no evidence that material nonpublic information was improperly passed from someone to Mr. Walters about Apple or Clorox. The jury will thus be left to speculate that because Mr. Walters was talking to someone who *could have had* material nonpublic information, and that person *might have* illegally leaked such information, it is therefore *possible* that some (as yet unidentified) trade by Mr. Walters *could have been* improper. Such evidence – or better described, such rank speculation – is not probative of anything and could not serve any proper purpose under Rule 404(b) (such as showing intent, knowledge or absence of mistake). *See DiCarlo*, 131 F. Supp. 2d at 539 (precluding introduction of Rule 404(b) material where "the introduction of proof of such broad, vague, and ephemeral matters in this already complex but reasonably focused case would so hopelessly confuse the jury as to substantially outweigh, both in terms of unfair prejudice and of confusion, any possible probative value"). The only purpose that would appear to be served is the improper one of smearing the character of the defendant (and others). Because the potential for prejudice far outweighs the non-existent probative value, the Apple and Clorox evidence should be excluded. *See United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002) (to be admissible under Rule 404(b), "evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial").

10

With respect to Affirmative Insurance and Westwood Holdings, the government faces a problem of its own making. To the extent that the government contends that the trading in these stocks *was* part of the charged crimes and *not* evidence of "other acts," it was required to give notice in the indictment or bill of particulars, as discussed above, and is now barred from seeking to introduce it. In fact, it is hard to see the government's strategy to disclose allegations about Affirmative Insurance at this late date as anything but a cynical gambit to prevent us from having sufficient time to prepare a defense. Even if trading in these other stocks is somehow treated as "other act" evidence, as the government attempts "in an abundance of caution," the government was, at a minimum, required to provide particularized notice of a reason why the evidence is for a permitted purpose under Rule 404(b), relevant to some fact in dispute and more probative than prejudicial, as well as the details of that alleged conduct. Having the cooperating witness simply blurt out that he recalls passing confidential information to Mr. Walters "beginning possibly as early as 2004" cannot meet this standard.[1]

The government cannot cure the shortcomings in its notice by claiming that the defense can attempt to figure out what the government has in mind by sifting through the voluminous discovery. Including "other crimes" evidence in the discovery in no way provides the defense with "reasonable notice" of the other acts evidence the government intends to introduce at trial or enables the defense adequately "to prepare for trial," because the defense is left to speculate about which documents the government may ultimately contend are admissible

---

[1] To the extent that Mr. Davis, as background to his relationship with Mr. Walters, intends to testify about subjects that are not "bad acts" within the scope of Rule 404(b), Mr. Walters would not necessarily object. For example, the government's notice indicates that Mr. Davis will testify that he spoke to Mr. Walters about Affirmative Insurance's "performance and future prospects." (Jan. 20, 2017 Letter at 1). We would not object to that testimony, which does not imply that Mr. Walters committed an uncharged crime, if the government does not otherwise claim that Mr. Walters did anything wrong in connection with that previously undisclosed company.

11

under the Rule. *United States v. Soliman*, No. 06 CR. 236A, 2008 WL 4490623, at *8 (W.D.N.Y. Sept. 30, 2008), is illustrative. In that case, the defendant was charged with health care fraud in a 64-count indictment. As part of its Rule 16 discovery, the government produced over 60,000 pages of documents that were seized from the defendant. When the defendant requested disclosure of Rule 404(b) materials, the government asserted that the requested materials were included among the 60,000 pages and refused to provide any further detail until sometime closer to trial. The court squarely rejected the government's response as inadequate: "Given the volume of documents in this case, the notice . . . is not sufficient. The Government should specifically identify the documents responsive to Rule 404(b) disclosure." *Id.* (citation omitted); *see also United States v. Spinner*, 152 F.3d 950, 961 (D.C. Cir. 1998) (noting that "providing [Rule 404(b)] evidence to the defense in discovery is not enough to satisfy the notice requirements of Rule 404(b)").

Nor, at this late date, can the government cure its deficient notice by providing the information required under the Rule in response to this motion. *See United States v. Gardell*, No. S4 00 CR. 632 (WHP), 2001 WL 1135948, at *6 (S.D.N.Y. Sept. 25, 2001) (rejecting government's notice as insufficient when provided for the first time in response to defendant's motion to preclude). In light of the particular facts of this case, any such notice would plainly be unreasonable "because of the lack of timeliness." Fed. R. Evid. 404(b) advisory committee's note (1991). It has taken many months for the defense to prepare to meet the charges in the indictment. After receiving the government's bill of particulars, we had nine new transactions added to the list that must be reviewed in painstaking detail. There simply is not enough time to add new stocks and an unknown quantity of transactions that the government has not identified with any level of detail whatsoever. Accordingly, we respectfully submit that the Court should

preclude the government from offering any evidence under Rule 404(b). *See United States v. Daugerdas*, 09 CR 581 (WHP) (Feb. 16, 2011), ECF No. 305 at p.3 (granting defense motion to exclude evidence of an additional transaction offered under Rule 404(b), where the Court had "cautioned the Government repeatedly about the need to cabin its proof and provide advance disclosure of the transactions to be offered at trial" and where, because of "the magnitude of the this case, Defendants cannot adequately prepare to rebut evidence related to the [additional] transaction with approximately one month remaining before trial").

### III. Admission of Uncharged Stock Transactions Will Unduly Lengthen the Trial and Confuse the Jury

Even if the government had adequately complied with the notice requirements of Rule 404(b), evidence relating to the uncharged stock trading or insider tips would still be inadmissible under Rule 403 because any conceivable relevance the evidence may have is vastly outweighed by the prejudicial effect of the "mini-trial" that will certainly result if the evidence is allowed.

Under Rule 403, courts have the discretion to exclude other act evidence if the probative value of the evidence is outweighed by its potential to confuse or mislead the jury or waste time. Fed. R. Evid. 403. Courts exercising that discretion have repeatedly excluded other acts evidence under Rule 403 where the evidence would lead to a collateral litigation that would unduly prolong the trial and distract the jury from the main charges in the case. *See, e.g.*, *United States v. Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990) (evidence properly excluded when "potential delay from allowing a mini-trial" outweighed probative value); *United States v. Kahn*, 472 F.2d 272, 279 (2d Cir. 1973) (upholding exclusion of proffered evidence because it "presented the very real danger of degenerating into a side trial"); *United States v. Fasciana*, 226 F. Supp. 2d 445, 459 (S.D.N.Y. 2002) (finding that "admission of evidence concerning [a prior similar act]

13

will lead to a confusion of the issues and unduly lengthen the trial"); *Gardell*, 2001 WL 1135948, at *6 (precluding 404(b) evidence that would require defendant to submit proof to refute government's allegations, "assume disproportionate significance at trial, lead to a mini-trial . . . and engender confusion among the issues").

If the government is allowed to inject vague and speculative allegations of insider trading in additional stocks into the evidence at trial, the length and the complexity of this case will expand dramatically because Mr. Walters will have "to mount a substantial defense to refute those allegations." *Gardell*, 2001 WL 1135948, at *6. Not only would such evidence unnecessarily prolong this trial, but it would also distract the jury from the specific trading in the stock of Dean Foods and Darden Restaurants that is actually at issue in this case and multiply exponentially the number of complex factual issues the jury must resolve.

In the face of similar circumstances, Judge Kaplan precluded the government from introducing evidence of uncharged tax-shelters in *United States v. Stein*, 521 F. Supp. 2d 266, 270-71 (S.D.N.Y. 2007). Although the government had argued (on proper notice to the defendants) that the evidence was admissible to show knowledge or intent and to show the relationship among co-conspirators, Judge Kaplan excluded the evidence, finding that it "risk[ed] confusion of the issues and undue delay" and was "likely to divert the jury's attention from the charged transactions, which [were] sufficiently complicated in themselves." *Id.* The same is true here.

A district court has "broad discretion in determining that a trial within a trial . . . would [be] more confusing than helpfully probative." *Ricketts v. City of Hartford*, 74 F.3d 1397, 1414 (2d Cir. 1996) (affirming exclusion of similar act evidence). Here the costs are clear, and the proffered evidence should not be admitted at trial. *See Schatzle*, 901 F.2d at 256 (trial court

14

properly concluded that potential delay of a mini trial on the contested similar act evidence outweighed its probative value); *United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (affirming exclusion of otherwise relevant similar act evidence under Rule 403 in deference to trial court's discretionary judgment that confusion and delay caused by trial within a trial would have substantially outweighed probative value of evidence).

## CONCLUSION

The government contends that Mr. Davis tipped Mr. Walters with respect to Dean Foods and Darden Restaurants on certain specific occasions over an approximately four-year period. The government can either prove that or it cannot. The government's attempt to introduce belatedly disclosed, vaguely-described and non-specific trading in stocks having nothing to do with Dean Foods and Darden Restaurants is clearly not proper. The inference that the government may hope the jury would draw from evidence about Mr. Walters' trading in other stocks – that Mr. Walters has a propensity to commit insider trading – is exactly the inference that Rule 404(b) forbids.

For the foregoing reasons, we respectfully request that this motion *in limine* to preclude the government from introducing evidence pursuant to Rule 404(b) should be granted.[2]

Dated: New York, New York
February 3, 2017

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ Barry H. Berke
Barry H. Berke
Paul H. Schoeman

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100  (Phone)
(212) 715-8000  (Fax)
bberke@kramerlevin.com
pschoeman@kramerlevin.com

*Counsel for Defendant William T. Walters*

---

[2] Because the government continues to produce documents pursuant to its Rule 16 obligations, and has not disclosed its exhibits, witnesses, or 3500 material, we respectfully request the opportunity to file additional motions *in limine* in the event the government's subsequent disclosures raise additional issues.