UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      :

    -v.-              :      S1 16 Cr. 338 (PKC)

WILLIAM T. WALTERS,      :
     a/k/a "Billy,"

           : Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PROPOSED JOINT REQUEST TO CHARGE
WITH DEFENDANT'S OBJECTIONS AND PROPOSED ADDITIONS**

Barry H. Berke
Paul H. Schoeman
Eric A. Tirschwell

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100  (Phone)
(212) 715-8000  (Fax)
bberke@kramerlevin.com
pschoeman@kramerlevin.com
etirschwell@kramerlevin.com

*Counsel for Defendant William T. Walters*

## <u>INTRODUCTION</u>

The Government respectfully submits its requests to charge the jury.  The proposed instructions are based principally on those given in recent insider trading cases *United States* v. *Stewart*, No. 15 Cr. 287 (LTS) (S.D.N.Y. 2016) (hereinafter "*Stewart*"); *United States* v. *Riley*, 13 Cr. 339 (VEC) (S.D.N.Y. 2014) (hereinafter "*Riley*"); *United States* v. *Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y. 2014) (hereinafter "*Martoma*"); *United States* v. *Steinberg*, No. 12 Cr. 121 (RJS) (S.D.N.Y. 2013) (hereinafter "*Steinberg*"); *United States* v. *Whitman*, No. 12 Cr. 125 (JSR) (S.D.N.Y. 2012) (hereinafter "*Whitman*"); and *United States* v. *Gupta*, No. 11 Cr. 907 (JSR) (S.D.N.Y. 2012) (hereinafter "*Gupta*")), as modified in light of *United States* v. *Newman*, 773 F.3d 438 (2d Cir. 2014) and *Salman* v. *United States*, 137 S. Ct. 420 (2016).  Certain more general charges are based on those given in *United States* v. *Bonventre*, No. 10 Cr. 228 (LTS) (S.D.N.Y. 2014) ("*Bonventre*").

Mr. Walters has reviewed the Government's proposed requests.  Where Mr. Walters objects to the government's proposed language, we have highlighted the text by using the ~~strike through~~ feature.  Where Mr. Walters requests alternative and/or additional language, those proposals are underlined.  The reasons for Mr. Walters' objections to the Government's requests and for his proposals for different and additional language are explained in footnotes, except where the language change is non-substantive and merely clarifying.

Mr. Walters also respectfully reserves the right to propose additional charges based on the government's misconduct, in the event the Court does not grant the pending motion to dismiss the indictment.

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

GENERAL INSTRUCTIONS ............................................................................. 1

    Court's Usual Instructions ........................................................................... 1

WITNESSES ........................................................................................................ 2

    Defendant's Testimony [or Defendant's Right Not to Testify] ................... 2

    Preparation of Witnesses ............................................................................. 4

    Law Enforcement Witnesses ........................................................................ 5

    Accomplice/Cooperating Witness Testimony .............................................. 6

    Uncalled Witnesses – Equally Available ..................................................... 8

    Persons Not on Trial .................................................................................... 9

OTHER EVIDENCE ......................................................................................... 10

    Summary Charts ......................................................................................... 10

    Audio Recordings and Transcripts ............................................................ 11

    Stipulations of Testimony .......................................................................... 12

    Stipulations of Fact .................................................................................... 13

    Particular Investigative Techniques Not Required ..................................... 14

THE CHARGES ................................................................................................ 15

    Multiple Counts ......................................................................................... 15

    Securities Fraud ......................................................................................... 16

    Conspiracy to Commit Securities Fraud .................................................... 28

    Wire Fraud ................................................................................................. 31

    Conspiracy to Commit Wire Fraud ............................................................ 33

    Conscious Avoidance ................................................................................. 34

    False Exculpatory Statements .................................................................... 36

    Venue ......................................................................................................... 37

    Internal Compliance Policies ..................................................................... 38

    Variance in Dates and Amounts ................................................................. 39

DEFENDANT'S PROPOSED CHARGES ........................................................ 40

    Ignore External Sources of Information .................................................... 40

    Witness Credibility – Prior Perjury ........................................................... 42

    Impeachment by Prior Inconsistent Statement ........................................... 42

CONCLUSION .................................................................................................. 44

## **GENERAL INSTRUCTIONS**

### **REQUEST NO. 1**

### **Court's Usual Instructions**

The Government respectfully requests that the Court give its usual instructions to the jury on the following matters:

a.    Roles of Court and Jury

b.    Indictment not Evidence

c.    Statements of Court and Counsel not Evidence

d.    Burden of Proof and Presumption of Innocence

e.    Reasonable Doubt

f.    Government Treated Like Any Other Party

g.    Definitions and Examples of Direct and Circumstantial Evidence

h.    Credibility of Witnesses

i.    Interest in Outcome

j.    Right to See Exhibits and Have Testimony Read During Deliberations

k.    Sympathy:  Oath as Jurors

l.    Punishment Is Not to Be Considered by the Jury

m.    Verdict of Guilt or Innocence Must be Unanimous

## WITNESSES

### REQUEST NO. 2

### Defendant's Testimony [or Defendant's Right Not to Testify]

[*If defendant testifies:*] The defendant in a criminal case never has any duty to testify or come forward with any evidence.  This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the Government at all times, and the defendant is presumed innocent.  In this case, the defendant did testify and he was subject to cross-examination like any other witness.  You should examine and evaluate the defendant's testimony just as you  would the testimony of any witness with an interest in the outcome of the case. The fact that the defendant elected to testify does not shift the burden of proof to the defendant.[1]

[*If defendant does not testify and requests an instruction concerning his election not to do so:*] The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to the defendant.

A defendant is never required to prove that he or she is ~~innocent~~ not guilty.[2]  Therefore, you must not attach any significance to the fact that the defendant did not testify.  No adverse inference against the defendant may be drawn by you because he did not take the witness stand, and you may not consider it against the defendant in any way in your deliberations in the jury room.

---

[1] Transcript of Jury Charge at 1893, *United States v. Contorinis,* No. 09 Cr. 1083 (RJS) (S.D.N.Y. Oct. 4, 2010).

[2] The defendant objects to the government's proposed language, and requests that the underlined language be given in the alternative. Jury Charge at 23, *United States v. Daugerdas*, No. S3 09 Cr. 581 (WHP) (S.D.N.Y. May 12, 2011).

*Stewart; Riley*; *Bonventre*; *see also United States* v. *Gaines*, 457 F.3d 238, 249 & n.9 (2d Cir. 2006) (regarding instruction about defendant's testimony).

## REQUEST NO. 3

### Preparation of Witnesses

You have heard evidence that, prior to appearing in court, witnesses have discussed the facts of the case and their testimony with attorneys.  Although you may consider this fact when you are evaluating a witness's credibility, I should tell you that there is nothing either improper or unusual about a witness meeting with lawyers before testifying, so that the witness can be aware of the subjects he or she will be questioned about, and can focus on those subjects and have the opportunity to prepare or review relevant exhibits before being questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness without such consultation.

*Stewart; Steinberg; Riley; Bonventr*e.

## REQUEST NO. 4

### Law Enforcement Witnesses

You have heard the testimony of witnesses employed as law enforcement officials. The fact that a witness may be employed by the government as a law enforcement official or employee does not mean that his or her testimony is necessarily deserving of any more or any less consideration, or greater or lesser weight, than that of any other witness. In this context, defense counsel is allowed to try to attack the credibility of such a witness on the ground that his or her testimony may be colored by a personal or professional interest in the outcome of the case. It is your decision, after reviewing all of the evidence, whether to accept the testimony of the law enforcement witness, as it is with every other type of witness, and to give that testimony whatever weight, if any, you find it deserves.

*Stewart; Steinberg.*

## REQUEST NO. 5

### Accomplice/Cooperating Witness Testimony

You have also heard from one witness, Thomas C. Davis, who testified that he has pled guilty to insider trading.  Mr. Davis testified pursuant to an agreement to cooperate with the Government.  <u>You may consider Mr. Davis' guilty plea in assessing his credibility, but you may not draw any conclusions or inferences about the guilt of the defendant from the fact that a cooperating witness pled guilty to crimes that may be similar or related to the crimes charged against the defendant, as a witness's decision to plead guilty was a personal decision about his own guilt and not anyone else's.  The law does not permit a defendant to be found guilty simply based on his association with some guilty party.</u>[3]

<u>In all other respects, however,</u> ~~T~~the law allows the use of accomplice testimony.  ~~Indeed, i~~It is the law in federal courts that the testimony of an accomplice may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.  ~~It is also the case,~~ However, <u>the law requires that the testimony and motives of a cooperating witness</u> ~~that accomplice testimony is of such a nature that it must~~ be scrutinized with great care and viewed with particular caution <u>when you decide how much if any of that testimony to believe</u>.  <u>After carefully scrutinizing the testimony of a cooperating witness and taking account of its special features, you may give it as little or as much weight as you deem appropriate</u>.[4]

I have given you some general considerations on credibility and I will not repeat them all here.  Nor will I repeat all the arguments made on both sides.  Nevertheless, let me say a few

---

[3] Adapted from Jury Charge at 11, *United States* v. *Whitman*, No. 12 Cr. 125 (JSR) (S.D.N.Y. Aug. 17, 2012), ECF No. 102.

[4] We submit this revised and expanded language – adapted from Judge Rakoff's charge in *United States v. Fleishman*, Jury Charge at 9, No. 11 Cr. 32 (JSR) (S.D.N.Y. Sept. 21, 2011), ECF No. 129 – is more balanced and fair.

things that you might want to consider during your deliberations on the subject of accomplices. You should ask yourselves whether Mr. Davis would benefit more by lying or by telling the truth.  Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely?  Or did he believe that his interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth?  Did this motivation color his testimony?  In sum, you should look at all of the evidence in deciding what credence and what weight, if any, to give to an accomplice witness.

*Stewart; Riley; see Bonventre.*

## REQUEST NO. 6

### Uncalled Witnesses – Equally Available

~~There are people whose names you heard during the course of the trial that did not appear in court to testify.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.~~

~~You should remember my instruction, however, that the law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence, and that the burden always rests with the Government to prove the defendant's guilt beyond a reasonable doubt.[5]~~

*Stewart; Bonventre; Riley*.

---

[5] Defendant objects to the government's proposed charge.  We respectfully submit that the preferred course is to leave this topic to the argument of counsel.  *See* Leonard B. Sand et al., *Modern Federal Jury Instructions*, Instr. 6-7, *Cmt*. ("A number of courts have recommended the first option, that no instruction be given, preferring to leave this topic to the argument of counsel.  Indeed, all of the pattern instructions that address the issue follow this course."); *see also United States v. Caccia*, 122 F.3d 136, 139 (2d Cir. 1997) ("Indeed, we have suggested that where a witness is equally available to both sides, a missing witness charge is inappropriate.") (internal quotations omitted).

## REQUEST NO. 7

### Persons Not on Trial

You may not draw any inference, favorable or unfavorable, towards the Government or the defendant from the fact that any person other than the defendant is not on trial here.  You also may not speculate as to the reasons why other persons are not on trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors.

*Stewart; Bonventre*.

## OTHER EVIDENCE

### REQUEST NO. 8

### Summary Charts

You have seen exhibits in the form of charts and summaries.  These exhibits purport to summarize the underlying evidence that was used to prepare them. These charts and summaries were admitted in order to save time and to avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

*Stewart; Riley; see Bonventre.*

# REQUEST NO. 9

## Audio Recordings and Transcripts
## [If applicable]

~~I instruct you that the audio recordings entered into evidence during this trial were made~~ ~~in a lawful manner, that no one's rights were violated, and that the Government's use of this~~ ~~evidence is entirely lawful.~~  The evidence in this case includes one or more audio recordings. ~~Therefore, you must give it~~ You must give the audio recordings your full consideration, along with all the other evidence in the case, as you determine whether the Government has proved the defendant's guilt beyond a reasonable doubt.  You must do that even if you disapprove of the way in which the evidence was collected.[6]

In connection with these recordings, the government and the defense were~~as~~ permitted to hand out transcripts prepared by the prosecution and defense teams.  The transcripts were given to you as an aid to assist you in listening to the tapes.  The transcripts are not, however, evidence.  Therefore, when the tapes were played, I advised you to listen very carefully to the tapes themselves. You must make your own determination of what appears on the tapes based on what you heard.  If you heard something different than what appears in the transcripts, what you heard is controlling.

*Stewart; Riley.*

---

[6] The objected to language was not given in the cited *Stewart* charge, Jury Charge at 21, *United States v. Stewart*, No. 15 Cr. 287 (LTS) (S.D.N.Y. Aug. 11, 2016), ECF No. 174, although it was given in the cited *Riley* charge, Transcript of Jury Charge at 2195-96, *United States* v. *Riley*, No. 13 Cr. 339 (VEC) (S.D.N.Y. Sept. 29, 2014).  Mr. Walters submits that instructing expressly and repeatedly that the calls were recorded lawfully may misleadingly suggest to the jury that they be given special weight.  In addition, the last sentence of the first paragraph of the proposed charge adequately instructs the jury not to disregard the recordings even if they disapprove of how they were obtained.

**REQUEST NO. 10**

**Stipulations of Testimony**
**[If applicable]**

In this case you have heard evidence in the form of stipulations of testimony. A stipulation of testimony is an agreement between the parties that, if called as a witness, the person would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the effect to be given that testimony.

*Stewart; Bonventre.*

**REQUEST NO. 11**

**Stipulations of Fact**
**[If applicable]**

In this case you have also heard evidence in the form of stipulations that contained facts that were agreed to be true.  In such instances, you must accept those facts as true.

*Stewart; Bonventre*.

## REQUEST NO. 12

**Particular Investigative Techniques Not Required
[If applicable]**

You have heard reference to the fact that certain investigative techniques were not used by law enforcement authorities.  There is no legal requirement, however, that the Government prove its case through any particular means.  The Government is not on trial, and law enforcement techniques are not your concern.[7]  Your concern is to determine whether or not the Government has proven the guilt of the defendant beyond a reasonable doubt.

*Bonventre; see Stewart.*

---

[7] Mr. Walters objects to this language as unduly broad and potentially misleading, particularly where – as here – a government cooperator reversed prior sworn testimony in exchange for the prospect of leniency.  Offering a cooperation agreement in exchange for testimony is a "law enforcement technique" that is highly relevant to the credibility of the government's key witness in this case, as noted in Request No. 5 above.

## THE CHARGES

### REQUEST NO. 13

### Multiple Counts

With these preliminary instructions in mind, let us turn to the specific charges (or "counts" as they are sometimes called) against Mr. Walters. I will, at times, refer to each count by the number assigned to it in the charging instrument, called an indictment. [*Indicate whether the Court intends to provide the jury with a copy of the indictment*.] You should know that there is no significance to the order of these numbers or the specific number of counts charged, and indeed my instructions will follow a different order than the order in which the various counts appear in the indictment.

There are ten counts in the indictment. The defendant is charged in Count One with conspiracy to commit securities fraud. Based on the same allegations the defendant is charged in Count Two with conspiracy to commit wire fraud. In Counts Three through Six, and in Counts Seven through Ten, the defendant is charged, respectively, with committing four different acts of securities fraud and wire fraud itself; these are sometimes called substantive counts. In a moment, I will instruct you on each of these charges in more detail. At the outset, however, let me instruct you that you must consider each individual charge separately and evaluate each on the proof or lack of proof that relates to that charge.  The Defendant is not charged with committing any crimes other than the offenses contained in the Indictment.  The Defendant has denied that he is guilty of these charges.[8]

*Stewart*; *Riley*; *Whitman*; *Gupta*.

---

[8] Adapted from Transcript of Jury Charge at 3693, *United States v. Steinberg,* No. 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013).  *See also* L. Sand et al., Instr. 3-3 ("The defendant is not charged with committing any crime other than the offenses contained in the indictment.").

## REQUEST NO. 14

### Securities Fraud

Let us turn first to the four substantive securities fraud charges, which are listed in the indictment as Counts Three through Six but which are more convenient to consider before Counts One and Two.  Each of these counts charges the defendant with unlawfully trading in the securities of the Dean Foods Company ("Dean Foods") or Darden Restaurants, Inc. ("Darden"), on the basis of material, non-public information, ~~or "inside information,"~~ that he received from Mr. Davis, knowing that Mr. Davis provided this information to the defendant in violation of his duty of trust and confidence and in return for, or in anticipation of, personal benefits (<u>"illegal inside information"</u>). Specifically:

<u>Count Three</u> charges the defendant with unlawfully trading in the securities of Dean Foods on or about May 8th and 9th, 2012, on the basis of such <u>illegal$^9$</u> inside information.

<u>Count Four</u> charges the defendant with unlawfully trading in the securities of Dean Foods on or about July 13th, 17th,18th, 23rd, 24th, and 31st, 2012, on the basis of such <u>illegal</u> inside information.

<u>Count Five</u> charges the defendant with unlawfully trading in the securities of Dean Foods on or about September 17th,18th, and 19th, and October 9th and 11th, 2012, on the basis of such <u>illegal</u> inside information.

<u>Count Six</u> charges the defendant with unlawfully trading in the securities of Darden stock on or about August 20th and 21st, 2012, on the basis of such <u>illegal</u> inside information.

---

[9] Mr. Walters submits that it is important to make clear that to constitute a crime, the trading must be based on *illegally obtained* inside information (i.e., information disclosed in breach of a duty of trust and confidence, in exchange for a personal benefit, and expecting or understanding that it would be used for trading, all as further described below).  Trading on inside information not disclosed under those circumstances is not a crime.

As to any of these four substantive counts that you are considering, the Government, in order to convict Mr. Walters on that count, must prove each of the following elements beyond a reasonable doubt:

First, that in connection with the purchase or sale of securities on the company in question, the defendant employed a device, scheme, or artifice to defraud, or engaged in an act, practice, or course of business that operated, or would operate, as fraud or deceit upon a purchaser or seller of the specified security;

Second, that when he engaged in this scheme, the defendant acted knowingly, willfully, and with an intent to defraud the company in question, its shareholders, or the market; and

Third, that in furtherance of the scheme, there occurred at least one use of any means or instrument of transportation or communication in interstate commerce, or the use of the mails, or the use of any facility of any national securities exchange.

A few words about the first element, device or artifice to defraud:  A device or artifice to defraud is merely a plan to accomplish a fraudulent objective.  The specific device, scheme, or artifice to defraud, or act, practice, or course of business that the Government alleges the defendant employed in connection with each of Counts Three through Six is known as insider trading.  For purposes of these charges, an insider is a person who possesses material, nonpublic information about a publicly traded company by virtue of a relationship that involves trust and confidence.  Such an insider has a legal duty — known as a duty of trust and confidence — not to disclose to anyone outside the company material financial or other material non-public information about the company that the company treats as confidential and has informed the insider should be treated as confidential.

17

As you know, Counts Three, Four, and Five charge Mr. Walters with trading in the securities of Dean Foods on the basis of material non-public information about Dean Foods that he received from Mr. Davis in violation of a duty of trust and confidence and in return for some personal benefit given, or anticipated to be given, by the defendant to Mr. Davis. Similarly, Count Six charges the defendant with trading in securities of Darden on the basis of material non-public information about Darden that he received from Mr. Davis in violation of a duty of trust and confidence and in return for some personal benefit given, or anticipated to be given, by the defendant to Mr. Davis.

In order to find that the Government has established this first element, you must answer each of the following questions yes:

Did the Government prove, beyond a reasonable doubt:

<u>One</u>, that Mr. Davis owed the entity that provided the information to Mr. Davis (Dean Foods for Counts Three through Five, and Barington Capital for Count Six) a duty of trust and confidence?

<u>Two</u>, that Mr. Davis violated that duty of trust and confidence by disclosing to the defendant material, non-public information that Mr. Davis obtained by virtue of his relationship with that entity, with the expectation or understanding that the defendant would trade on it[10]?

---

[10] *See Salman v. United States*, 137 S. Ct. 420, 427 (2016) (noting that the Government conceded that "in order to establish a defendant's criminal liability as a tippee, it must prove beyond a reasonable doubt that the tipper expected that the information being disclosed would be used in securities trading"); *id.* at 428 ("[B]y disclosing confidential information as a gift to his brother *with the expectation that he would trade on it,* [the tipper] Maher breached his duty of trust and confidence to Citigroup and its clients – a duty [the tippee] Salman acquired, and breached himself, by trading on the information with full knowledge that it had been improperly disclosed.") (emphasis added); Jury Charge at 29, *Stewart*, No. 15 Cr. 287 (instructing that jury must find that the tipper must have "anticipated that his father would trade on the basis of this information"); Transcript of Jury Charge at 3371, *United States v. Gupta*, No. 11 Cr. 907 (JSR) (S.D.N.Y. June 14, 2012) (charging the jury that the government must prove that "Mr. Gupta

<u>Three</u>, that Mr. Davis anticipated receiving a personal benefit of some kind from disclosing the material, non-public information to the defendant?

<u>Four</u>, the defendant knew that Mr. Davis disclosed the information in breach of a duty of trust and confidence and for personal benefit <u>and that Mr. Davis expected trading to ensue</u>[11]? and

<u>Five</u>, that the defendant used the material, non-public information to trade securities or to cause others to trade securities?

To answer the first question, concerning the existence of a duty of trust and confidence, you must look to all of the facts and circumstances and ask whether both <u>Mr. Davis</u> ~~the defendant~~ and the entity recognized that their relationship involved trust and confidence.

As to the second question, regarding disclosure of material non-public information, information is non-public if, at the time it was disclosed, it was not available to the public through such sources as press releases, Securities and Exchange Commission filings, trade publications, analysts' reports, newspapers, magazines, <u>television, radio, websites, internet chat rooms, online message boards,</u> rumors, word of mouth or other similar sources.  <u>In assessing whether information is nonpublic, the keyword is "available."  If information is available in the public media or in SEC filings, it is public.  However, the fact that information has not appeared in the newspaper or other widely available public medium does not alone determine whether the information is nonpublic.  Sometimes a corporation authorizes the release of information or is</u>

---

anticipated that Mr. Rajaratnam or others at Galleon would trade on the basis of this information . . . ."); Brief for the United States at 24, *Salman v. United States*, 137 S. Ct. 420 (2016) (No. 15-628) ("'[T]he government must prove' that 'the tipper conveyed material nonpublic information to his 'tippee' with the understanding that it would be used for securities trading purposes.'") (quoting *United States v. Gansman,* 657 F.3d 85, 92 (2d Cir. 2011)).

[11] *Salman,* 137 S. Ct. at 427 ("The Government also notes that, to establish a defendant's criminal liability as a tippee, it must prove that the tippee knew that the tipper breached a duty – in other words, that *the tippee knew* that the tipper disclosed the information for a personal benefit and *that the tipper expected trading to ensue*.") (emphasis added).

otherwise willing to make information available to securities analysts, prospective investors, or members of the press who ask for it even though it may never have appeared in any newspaper or other publication.  Such information would be public.  For example, if a company has a policy to give out certain information to people who ask for it, that information is public information.  Accordingly, information is not necessarily nonpublic simply because there has been no formal announcement or because only a few people have been made aware of it.  In evaluating what information a given company, such as Dean Foods or Darden, has treated as confidential, you may consider written company policies, employee training, measures the company has taken to guard the information's secrecy, the extent (if any) to which the information has already been disclosed to outsiders, the ways (if any) in which the company has authorized other employees to disclose the information, including any non-disclosure or confidentiality agreements, and any other relevant facts and circumstances.  Whether information is nonpublic is an issue of fact for you to decide.[12]

Confirmation by an insider of facts or rumors that the company has not confirmed publicly itself may be the disclosure of inside information.  A tip from a corporate insider that is more reliable and ~~or more~~ specific than unconfirmed facts or public rumors is non-public information, even if the information is also the subject of rumors in the media or the investment community.  Whether or not the confirmation of a rumor by an insider qualifies as material nonpublic information is an issue for you to decide.[13]

---

[12] The added proposed language is adapted from Judge Sullivan's charge in *Steinberg,* Transcript of Jury Charge at 3702, No. 12 Cr. 121. *See also* Transcript of Jury Charge at 4031, *United States v. Newman*, No. 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 12, 2012).

[13] The added proposed language is adapted from Judge Sullivan's charge in *Steinberg,* Transcript of Jury Charge at 3703, No. 12 Cr. 121. *See also* Transcript of Jury Charge at 4032, *Newman*, No. 12 Cr. 121.

      <u>You must also be persuaded, beyond a reasonable doubt, as to the count you are</u>

<u>considering, that the information Davis disclosed was "material."</u>  If this inside information

would be important to a reasonable investor in deciding whether to buy or sell the stock of the

company, it is called "material" nonpublic information.  <u>Put another way, there must be a</u>

<u>substantial likelihood that the fact would have been viewed by the reasonable investor as having</u>

<u>significantly altered the total mix of information then available.  Materiality of the information is</u>

<u>judged as of the time the information was disclosed.</u>[14]  <u>You should be aware that information is</u>

<u>not material if its significance would not be apparent to the reasonable investor, even though it</u>

<u>may have some significance to a particular investor because of that investor's unique or</u>

<u>specialized skill, expertise, knowledge or insight.</u>[15]  In determining whether information is

---

[14] The added proposed language is adapted from Judge Sullivan's charge in *Steinberg*, Transcript of Jury Charge at 3703, No. 12 Cr. 121, and Judge Swain's charge in *Stewart*, Jury Charge at 30, No. 15 Cr. 287.

[15] *See* 18 Donald C. Langevoort, *Insider Trading Regulation, Enforcement and Prevention* § 5:3 (2016) ("A case can arise where a person receives nonpublic information—for example, the planned introduction of a new product—that by itself would not be terribly important to the investment community generally. But because of the person's unique expertise and research, that information leads him to conclude that the company's earnings will increase substantially. In that case, he should not be precluded from trading, for though the information was material to him, it was not material to the "reasonable" investor in the marketplace. For this reason, investment analysts can properly elicit bits of information from company insiders and piece them together in a mosaic that can lead to an investment decision, so long as the pieces of information are not, standing alone, material. In that case, it is principally the skill of the analyst that leads to the profit, not simply his access to an insider.").  *See also* Selective Disclosures and Insider Trading, SEC Release No. 7881, 2000 WL 1201556, at *11 (Aug. 15, 2000) ("[A]n issuer is not prohibited from disclosing a non-material piece of information to an analyst, even if, unbeknownst to the issuer, that piece helps the analyst complete a "mosaic" of information that, taken together, is material. Similarly, since materiality is an objective test keyed to the reasonable investor, Regulation FD will not be implicated where an issuer discloses immaterial information whose significance is discerned by the analyst. Analysts can provide a valuable service in sifting through and extracting information that would not be significant to the ordinary investor to reach material conclusions. We do not intend, by Regulation FD, to discourage this sort of activity. The focus of Regulation FD is on whether the issuer discloses material nonpublic information, not on whether an analyst, through some combination of persistence, knowledge,

material, you may consider whether it was specific or general and the extent to which the

recipient is still undertaking a substantial economic risk if he bases an investment decision on

that information.[16]

      With respect to the third question, you must determine whether Mr. Davis, the insider,

received or anticipated receiving a personal benefit in exchange for providing inside information

to the defendant. "Personal benefit" ~~is broadly defined to~~ includes not only monetary gain, but

also, among other things, the benefit one would obtain from simply making a gift of confidential

information to a trading friend ~~or family member~~ with whom one shares a meaningfully close

personal relationship~~; it does not need to be financial or tangible in nature~~.[17]  But the

---

and insight, regards as material information whose significance is not apparent to the reasonable
investor."); SEC Regulation FD Compliance and Disclosure Interpretations, Question 101.03
(Aug. 14, 2009) ("An issuer also would not be conveying [material nonpublic] information if it
shared seemingly inconsequential data which, pieced together with public information by a
skilled analyst with knowledge of the issuer and the industry, helps form a mosaic that reveals
material nonpublic information. It would not violate Regulation FD to reveal this type of data
even if, when added to the analyst's own fund of knowledge, it is used to construct his or her
ultimate judgments about the issuer.")

[16] *See SEC v. Monarch Fund*, 608 F.2d 938, 942 (2d Cir. 1979) ("Then there is the question
whether the disclosed information is of a specific or general nature. This determination is
important because it directly bears upon the level of risk taken by an investor. Certainly the
ability of a court to find a violation of the securities laws diminishes in proportion to the extent
that the disclosed information is so general that the recipient thereof is still 'undertaking a
substantial economic risk that his tempting target will prove to be a 'white elephant.''") (citation
omitted).

[17] Mr. Walters objects to "broadly defined" as unnecessary and confusing; while the Second
Circuit uses has used this language in opinions, it does not make sense to include it in the charge
when more specific guidance is provided.

The language about tipping to a trading "family member" should be removed as there is no such
claim here.

Even after *Salman*, there is an open question as to whether the portion of *United States v.
Newman*, 773 F.3d 438, 452 (2d Cir. 2014), requiring "a meaningfully close personal
relationship" where the theory of the tip is a gift to a trading relative or friend, survives.  We note

Government must show that the insider is disclosing inside information to an outsider for some personal reason, rather than a company-approved purpose, and is obtaining some personal benefit, however modest.[18]

    If you find that Mr. Davis had a relationship of trust and confidence and tipped the defendant with material, non-public information, anticipating or expecting the defendant would trade on it and in return for a personal benefit, then you must determine whether the Government has proven, beyond a reasonable doubt, that the defendant *knew* that the information Mr. Davis disclosed to him was obtained done so in breach of a duty of trust and confidence and for personal benefit and that Mr. Davis expected trading to ensue.[19]   As to the defendant's

---

that this specific issue has been extensively briefed and is currently before the Second Circuit in *United States v. Martoma*, Docket No. 14-3599.  We read *Salman* as rejecting only the *Newman* Court's holding that, where there is a gift of information to a trading relative or friend, the "tipper must also receive something of a 'pecuniary or similarly valuable nature.'"  137 S. Ct. at 428 (quoting *Newman*, 773 F.3d at 452).  Because the tip in *Salman* was undisputedly to a "close relative," *id.* at 427, the Supreme Court had no occasion to consider or disturb the "meaningfully close personal relationship" requirement set out in *Newman*.  We submit that such a requirement remains critical to draw a line between a friend (where a gift of confidential information can satisfy the benefit requirement) and a casual acquaintance (where it may not).

As to the last clause of this sentence (i.e., "it does not need to be financial or tangible in nature"), the government's proposed language misreads *Salman*.  *Salman* held that a gift of information to a "trading relative or friend" is "the equivalent of a cash gift," and thus the tipper "benefits personally because giving a gift of trading information is the same thing as trading by the tipper followed by a gift of the proceeds."  137 S.Ct. at 428.  *Salman* goes on to say that the tipper need not "*also* receive something of a 'pecuniary or similarly valuable nature' in exchange for" such a gift, *id.* (emphasis added), but that is because the gift itself is "the equivalent of a cash gift" that personally benefits the tipper.  In other words, the *Salman* Court found that the gift of information to a "trading relative or friend" was financial and tangible, to use the Government's proposed language, and thus nothing more was required.  *Salman* did *not* hold that the benefit need not be "financial or tangible" as a general proposition, and the jury should not be so instructed here.

[18] Mr. Walters believes the language is unnecessary and potentially confusing in light of the more specific language about the nature of the required benefit.

[19] *See* n.11, supra.

knowledge that the insider has breached the insider's duty of trust and confidentiality in return

for some actual or anticipated benefit, it is not necessary that the defendant know the specific

confidentiality rules of a given company or the specific benefit given to or anticipated by the

insider in return for disclosure of inside information; rather, it is sufficient that the defendant had

a general understanding that the insider was improperly disclosing inside information for

personal benefit and for trading purposes.

It is important to note that the law permits investors, analysts and investment advisers to

meet and speak with corporate officers, directors and other insiders, as well as experts affiliated

with such companies, in order to ferret out and analyze information useful in making investment

decisions. I want to emphasize that the receipt and use of material, non-public information does

not violate the law unless (1) the inside information was improperly provided to the defendant by

an insider or tipper in violation of the duties and obligations that person owed to the company

that owned the information, and (2) the defendant knew that the insider or tipper had violated

that duty in disclosing the inside information to the defendant, and had done so in exchange for a

personal benefit and anticipating or expecting that the recipient would trade on it.[20]

Finally, you must determine whether the defendant used or caused others to use the

information to trade securities.  In determining whether the defendant used the information to

trade, or cause others to trade, securities, you need only determine that the information was a

factor in the decision to trade – it need not have been the only factor.

---

[20] Adapted from Jury Charge at 26, *United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y. Jan. 31, 2014), ECF No. 229; Transcript of Jury Charge at 5614, *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH) (Apr. 25, 2011).  *See also Dirks v. SEC*, 463 U.S. 646, 658 (1983) ("Imposing a duty to disclose or abstain solely because a person knowingly receives material nonpublic information from an insider and trades on it could have an inhibiting influence on the role of market analysts . . . .  It is commonplace for analysts to ferret out and analyze information, and this is often done by meeting with and questioning corporate officers and others who are insiders.") (citations and quotations omitted).

As I indicated earlier, these five questions all must be answered in the affirmative for each count in order for you to determine that the Government has sustained its burden of proof as to the first element of the crime of securities fraud.  If as to any count the answer to any of those five questions is no, then you must find that the Government did not satisfy its burden of proof, and you must return a verdict of not guilty as to that count.

The second element that the Government must establish, beyond a reasonable doubt, is that the defendant participated in the insider trading scheme, knowingly, willfully, and with intent to defraud.  To act knowingly means to act voluntarily and deliberately, rather than mistakenly or inadvertently.  To act willfully means to act deliberately and with a purpose to do something that the law forbids.  Intent to defraud in the context of this alleged insider trading scheme means that the defendant ~~to~~ acted with knowledge that ~~the intent to disclose~~ the company's confidential information had been improperly disclosed to him ~~without its knowledge~~.[21]

Whether the defendant acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other fact question.  Direct proof of knowledge and intent to defraud is not required.  Knowledge and criminal intent may, like any other fact, be established by circumstantial evidence.

---

[21] The Government's proposed phrasing describes "intent to defraud" from the perspective of the tipper, Mr. Davis.  The proposed modified language describes the required "intent to defraud" on the part of Mr. Walters.  *See Salman*, 137 S. Ct. at 428 (tippee was guilty because the evidence was sufficient to establish he "trad[ed] on the information with full knowledge that it had been improperly disclosed").  *See also* Transcript of Jury Charge at 3707, *Steinberg*, No. 12 Cr. 121 ("For the Defendant to have acted with the specific intent to defraud means that he must have known of the fraudulent nature of the scheme and acted with the intent that it succeed."); Jury Charge at 33, *Stewart*, No. 15 Cr. 287 (using substantially similar language).

Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking. However, you do have before you evidence of certain acts and conversations alleged to have taken place with the defendant or in his presence. The Government contends that these acts and conversations show beyond a reasonable doubt knowledge on the part of the defendant of the unlawful purposes of the charged conspiracy. On the other hand, the defendant denies either that these acts and conversations took place or show that he had such knowledge and intent. It is for you to determine whether the Government has established beyond a reasonable doubt that such knowledge and intent on the part of the defendant existed.

Because an essential element of the crime charged is intent to defraud, good faith on the part of the defendant is a complete defense to the charge of insider trading.  That is, the law is not violated if the defendant held an honest belief that his actions were proper and not in furtherance of any unlawful scheme.  A defendant, however, has no burden to establish a defense of good faith; it remains the Government's burden to prove, beyond a reasonable doubt, that the defendant acted knowingly, willfully, and with intent to defraud.

The third and final element that the Government must prove beyond a reasonable doubt is that the disclosure of material, nonpublic information or trading based on that information involved the use of some instrumentality of interstate commerce, such as an interstate telephone call, use of the mails, or use of a facility of a national securities exchange, such as a stock or options trade made on the NASDAQ, the New York Stock Exchange or the International Stock Exchange.

As to each tip and trade alleged in Counts Three through Six of the Indictment, if you find that the Government has proven each element, beyond a reasonable doubt, then you must find the defendant guilty of that count.  On the other hand, if you find that the Government has

failed to prove any element of any count beyond a reasonable doubt, then you must find the defendant not guilty of that count.

     *See Whitman; Stewart; Riley; and Salman.  See also U.S. v. Joseph Collins, 07* Cr. 1170 (LAP).

**REQUEST NO. 15**

**Conspiracy to Commit Securities Fraud**

Count One charges Mr. Walters with conspiracy to commit securities fraud—the same crime I have just described to you.  In order to sustain its burden of proof with respect to a conspiracy charge, the Government must prove beyond a reasonable doubt each of the following three elements:

First, that the charged conspiracy existed;

Second, that the defendant intentionally joined and participated in this conspiracy during the applicable time period; and

Third, that at least one of the co-conspirators committed an overt act in furtherance of the conspiracy.

The first element is simply the existence of a conspiracy.  A conspiracy is an agreement, or an understanding, by two or more persons to accomplish one or more unlawful objectives by working together.  In this case, the unlawful objects of the conspiracy are alleged to be trading on the basis of material, non-public information that was improperly disclosed regarding Dean Foods and/or Darden.  To prove that a conspiracy exists, the Government must prove that two or more people explicitly or implicitly came to an understanding to achieve at least one of the specified objects.  It is not necessary for you to find that the agreement was ever expressed orally or in writing, but the Government does have to prove that there was a mutual understanding between at least two people.

The indictment charges that the conspiracy lasted from in or about 2008 through in or

28

about 2014.  It is not necessary for the Government to prove that the conspiracy lasted throughout the entire period alleged, but only that it existed for some period within that time frame.

If you conclude that the Government has proven beyond a reasonable doubt that the charged conspiracy existed, you must then consider whether the Government has proven, beyond a reasonable doubt, that Mr. Walters intentionally joined the conspiracy, either at the outset or at some later point.  To prove this element, the Government must prove beyond a reasonable doubt that the defendant knowingly and willfully joined the insider trading conspiracy for the purpose of furthering its unlawful object.  The key question, therefore, is whether the defendant entered into the agreement with an awareness of at least some of the basic aims and purposes of the unlawful agreement.  It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences which may be drawn from them.[22]

As I have already instructed you, knowingly means to act consciously and voluntarily, rather than by mistake or accident, and willfully means to act deliberately and with a purpose to do something that the law forbids.  It is not necessary that a defendant be fully informed of all the details of the conspiracy, or all of its participants.  He need know only one other member of the conspiracy and need know only one of its objects.  He can join the conspiracy at any point and need not have received any benefit in return.  On the other hand, mere association between the defendant and a conspirator does not make the defendant a member of the conspiracy, even if he knows that the conspiracy exists.  In other words, knowledge and association are not enough;

---

[22] Transcript of Jury Charge at 3720, *Steinberg*, No. 12 Cr. 121.

the defendant must have intentionally participated in the conspiracy with the purpose of helping to achieve at least one of the unlawful objects.

The third element that the Government must prove, beyond a reasonable doubt, is that some member of the conspiracy, not necessarily the defendant, knowingly committed at least one overt act in furtherance of the conspiracy.  An overt act is any act intended to help achieve the object of the conspiracy.  An overt act, itself, need not be a criminal act, but it must contribute to the goals of the conspiracy.  The overt act requirement may be met, even if the fraudulent scheme is never actually carried out.

In sum, if you find the Government proved, beyond a reasonable doubt, that the charged conspiracy existed, that Mr. Walters <u>knowingly and willfully</u> joined and <u>participated in</u> it, and that at least one overt act was committed in furtherance of the conspiracy, then you should find the defendant guilty of Count One.  On the other hand, if you find that the Government has not proved, beyond a reasonable doubt, any of those essential elements, then you must find the defendant not guilty of Count One.

*Stewart; Riley; see Whitman; Gupta.*

## REQUEST NO. 16

### Wire Fraud

Counts Seven through Ten each charge Mr. Walters with a substantive count of the crime of wire fraud.  Specifically, Counts Seven through Ten each charge that the defendant participated in a scheme to defraud either Dean Foods and its shareholders (in connection with Walters' trading in Dean Foods), or Barington Capital (in connection with Walters' trading in Darden), by using material, non-public information obtained from Mr. Davis, who owed fiduciary and other duties of trust and confidentiality to Dean Foods and Barington Capital, to execute certain securities transactions using interstate wires (for example, through the Internet, wire transfers of money, or electronic trades), in furtherance of the scheme.  Specifically:

Count Seven charges the defendant with unlawfully trading in the securities of Dean Foods on or about May 8th and 9th, 2012, on the basis of such inside information.

Count Eight charges the defendant with unlawfully trading in the securities of Dean Foods on or about July 13th, 17th, 18th, 23rd, 24th, and 31st, 2012, on the basis of such inside information.

Count Nine charges the defendant with unlawfully trading in the securities of Dean Foods on or about September 17th, 18th, and 19th, and October 9th and 11th, 2012, on the basis of such inside information.

Count Ten charges the defendant with unlawfully trading in the securities of Darden stock on or about August 20th and 21st, 2012, on the basis of such inside information.

For each of these counts, the Government must prove the following three elements:

First, the defendant employed a device, scheme, or artifice to defraud or obtained money or property by false pretenses, representations or promises;

31

Second, the defendant acted knowingly and willfully, with knowledge of the fraudulent nature of the scheme and with specific intent to defraud; and

Third, in the execution of the scheme, the defendant used, or caused to be used, interstate wires.

First, a device or artifice to defraud is merely a plan to accomplish a fraudulent objective. I explained in the context of securities fraud what it means to <u>employ a device, scheme or artifice to defraud, and</u> to act knowingly and willfully, and ~~that~~ <u>those</u> earlier explanation<u>s</u> apply~~ies~~ here.[23]  To prove that the defendant acted with specific intent to defraud, the Government must prove that he acted with the intent to deprive either Dean Foods or Barington Capital, depending on the count you are considering, of something of value—for example, material, non-public information—by trading on the basis of that information, <u>and knowing that information had been improperly disclosed</u>.  In this context, "material" means simply that the information was important to the entity at issue.  "Non-public" has the same meaning as I previously stated.

> *See Stewart; United States* v. *Fleishman*, No. 11 Cr. 32 (JSR), Docket Entry No. 129 (Jury Instruction), at 17; *Carpenter* v. *United States*, 484 U.S. 19, 25 (1987) (intent to defraud in context of mail fraud charge in insider trading case); *United States* v. *Rios*, No. 91 Cr. 94 (LBS) (S.D.N.Y. 1992).

---

[23] In *Stewart,* cited by the Government, the Court instructed the jury that for the conspiracy to commit wire fraud count, it should use the same instructions the Court had given for securities fraud in determining "what it means to employ a device, scheme or artifice to defraud, and to act knowingly and willfully." Jury Charge at 42, *Stewart*, No. 15 Cr. 287.  Here, the scheme to defraud charged in the wire fraud counts of the indictment is to use "material, non-public information obtained from Davis, who owed fiduciary and other duties of trust and confidentiality to Dean Foods and [Barington], to execute the securities transactions." Indictment ¶ 57.  The charged wire fraud scheme thus tracks the components of the securities fraud scheme, consistent with *Carpenter v. United States,* 484 U.S. 19, 26-28 (1987), which upheld a wire fraud conviction based on evidence that established (i) a breach of a duty of confidentiality and misappropriation of confidential business information, (ii) for the tipper's personal benefit and his "own use," and (iii) to make money through securities trading.

## REQUEST NO. 17

### Conspiracy to Commit Wire Fraud

The final count to address is Count Two, which charges the defendant with conspiracy to commit wire fraud. For this count, the Government must prove two elements:

First, that the charged conspiracy existed;

Second, that the defendant intentionally joined and participated in this conspiracy during the applicable time period.

My earlier explanations about these elements, in the context of Counts Seven through Ten, apply here.

Unlike the conspiracy charged in Count One, however, the Government does not have to prove that any overt act was taken in furtherance of the conspiracy in order for the defendant to be guilty of conspiracy to commit wire fraud. The other difference between this count and Count One is the object of the conspiracy charged: here, the object is alleged to be wire fraud, which is the crime I just described to you. Specifically, the wire fraud scheme that is alleged to be the object of the conspiracy charged in Count Two is the use of the interstate or international wires (for example, through phone calls, e-mail communications, or electronic trades) in furtherance of a scheme to defraud one or more of the entities at issue of non-public information that was material to the entity in question.

> See United States v. Fleishman, 11 Cr. 32 (JSR), Docket Entry No. 129 (Jury Instruction), at 17; Carpenter v. United States, 484 U.S. 19, 25 (1987) (intent to defraud in context of mail fraud charge in insider trading case); United States v. Rios, 91 Cr. 94 (LBS) (S.D.N.Y. 1992).

33

## ~~REQUEST NO. 17~~

### ~~Conscious Avoidance~~

~~As I have explained, all of the counts charged require the Government to prove that the defendant acted knowingly. In determining whether the defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious.~~

~~I would like to point out that the necessary knowledge on the part of the defendant with respect to any particular charge cannot be established by showing that the defendant was careless, negligent, or foolish. However, one may not willfully and intentionally remain ignorant of a fact material and important to his conduct in order to escape the consequences of criminal law.~~

~~Thus, if you find beyond a reasonable doubt that the defendant was aware that there was a high probability that a crime was being committed, but that the defendant deliberately and consciously avoided confirming this fact, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge, unless you find that the defendant actually believed that he was not engaged in such unlawful behavior. In other words, a defendant cannot avoid criminal responsibility for his own conduct by "deliberately closing his eyes," or remaining purposefully ignorant of facts which would confirm to him that he was engaged in criminal conduct.~~[24]

> *Stewart; See United States* v. *Park*, 05 Cr. 59 (DC) (S.D.N.Y. 2006); *see also United States* v. *Bonventre*, -- F. App'x --, 2016 WL 1579036, at *7-8 (2d Cir. Apr. 20, 2016) (summary order) (approving conscious avoidance charge given by this Court); *United States* v. *Whitman*, 555 F. App'x 98, 105–06 (2d Cir. 2014)

---

[24] Mr. Walters objects to this charge, and believes it will not be supported by the evidence at trial and is inconsistent with the government's theory of the case. *See United States v. Quattrone*, 441 F.3d 153, 181 (2d Cir. 2006) (conscious avoidance charge may only be given where appropriate factual predicate for the charge exists).

(summary order) (approving charge in insider trading case); *United States* v. *Cuti*, 720 F.3d 453, 463 (2d Cir. 2013).

**REQUEST NO. 18**

**False Exculpatory Statements**
**[If applicable]**

You have heard testimony that the defendant made statements in which the defendant claimed that his conduct was consistent with innocence and not with guilt.  The Government claims that these statements in which the defendant exculpated himself are false.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may infer that the defendant believed that he was guilty.  You may not, however, infer on the basis of this alone that the defendant is, in fact, guilty of the crimes for which the defendant is charged.

Whether or not the evidence as to a defendant's statements shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

Sand *et al., Modern Federal Jury Instructions*, 6-11.

## REQUEST NO. 19

### Venue

With respect any given count you are considering, the Government, in addition to proving the essential elements of that charge, must also prove that at least one act in furtherance of the charge occurred in the Southern District of New York. This is called establishing venue. The Southern District of New York includes all of Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess, Orange and Sullivan Counties.

The Government does not have to prove that a completed crime was committed within the Southern District of New York, or that the defendant was ever in the Southern District of New York. It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this District. The act itself may not be a criminal act. It could include, for example, processing or executing a securities trade within this District. And the act need not have been taken by Mr. Walters, so long as the act was part of the crime that you find Mr. Walters committed.

Unlike the elements of the offenses which must be proven beyond a reasonable doubt, the government is only required to prove venue by a preponderance of the evidence. A preponderance of the evidence means that it is more probable than not that some act in furtherance of the crime you are considering occurred in this District.

*Stewart; Riley; see also Martoma; Steinberg; Whitman; Gupta.*

## REQUEST NO. 20

### Internal Compliance Policies

During the course of the trial, you heard testimony and argument and were shown exhibits regarding the internal compliance policies of Dean Foods.  I remind and instruct you that a violation of a compliance policy or an internal rule is not the same as a violation of the law. Even if a particular disclosure of information would violate these policies, it would not necessarily violate the law.  You may consider such evidence and argument only as it related to ~~the defendant's~~ [Mr. Davis'] state of mind.

During your deliberations you must follow my instructions on the law and the definitions that I have provided to you. To the extent that the policies define terms in a manner inconsistent with the instructions I will give you, the definition that I provide is the definition that you must use.

During your deliberations, you must follow my instructions on the law and the definitions that I have provided to you.  In this case, your role is to determine whether the defendant violated the law, and specifically whether <u>or not the government has proven beyond a reasonable doubt that</u> he is guilty of the crimes charged in the indictment, not whether <u>anyone else</u> ~~he~~ may have violated any internal policies.

*Stewart; Riley; Steinberg*.

38

**REQUEST NO. 21**

**Variance in Dates and Amounts**

The indictment refers to various dates and amounts.  I instruct you that it does not matter if a specific event is alleged to have occurred on or about a certain date or month but the testimony indicates that in fact it was a different date or month.  Nor does it matter if the indictment alleges that a transaction involved a specific number of shares or amount of money, but the testimony indicates that it was a different amount.  The law requires only a substantial similarity between the dates, months, and amounts alleged in the indictment and the dates, months, and amounts established by the evidence.

*Stewart*; *Riley*; *Steinberg*.

## DEFENDANT'S REQUEST NO. 1

### Ignore External Sources of Information

I instruct you that anything you may have seen or heard about this case outside the courtroom is not evidence and must be entirely disregarded.[25]  Indeed, you should continue to turn away from any media article or report about this case or about the people, companies or issues referred to during this trial, and not be affected by any outside information from any source whatsoever.  In other words, your focus should be entirely on assessing the evidence that was presented here for your consideration, and on nothing else.[26]

---

[25] Transcript of Jury Charge at 3683, *Steinberg*, No. 12 Cr. 121. *See also* L. Sand et al., Instr. 5-4.

[26] Transcript of Jury Charge at 3359, *Gupta*, No. 11 Cr. 907. *See also* Transcript of Jury Charge at 3683, *Steinberg*, No. 12 Cr. 121.

**DEFENDANT'S REQUEST NO. 2**

**Witness Credibility – Prior Perjury**

There has been evidence that a witness who testified at this trial lied under oath at other proceedings.  I must warn you that the testimony of such witnesses should be viewed cautiously and weighed with great care.  It is, however, for you to determine how much of the witness' testimony, if any, you wish to believe.[27]

---

[27] Adapted from L. Sand et al., Instr. 7-18. *See also* Jury Charge at 13, *Daugerdas*, No. S3 09 Cr. 581 (giving similar charge).

## DEFENDANT'S REQUEST NO. 3

### Impeachment by Prior Inconsistent Statement

The testimony of a witness may be discredited by showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something, or failed to say or do something, which is inconsistent with the testimony the witness gave at this trial.

Here, you have heard evidence that witnesses made statements on earlier occasions that counsel argue are inconsistent with the witnesses' trial testimony. Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence bearing on the defendant's guilt. Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe. If you believe that a witness has been discredited in this manner, it is exclusively your right to give the testimony of that witness whatever weight you think it deserves.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to be

given to the inconsistent statement in determining whether to believe all or part of the witness

testimony.[28]

---

[28] Transcript of Jury Charge at 1708-09, *United States v. Hirst*, No. 15 Cr. 643 (PKC) (S.D.N.Y. Sept. 26, 2016).

## **CONCLUSION**

In submitting these requests to charge, Mr. Walters respectfully reserves the right to submit additional or modified requests at or near the close of evidence.

Dated: New York, New York
        February 3, 2017

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:  /s/ Barry H. Berke                    
Barry H. Berke
Paul H. Schoeman
Eric A. Tirschwell

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100  (Phone)
(212) 715-8000  (Fax)
bberke@kramerlevin.com
pschoeman@kramerlevin.com
etirschwell@kramerlevin.com

*Counsel for Defendant William T. Walters*