H473WAL1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                New York, N.Y.

          v.                             S1 16 Cr. 0338(PKC)

WILLIAM T. WALTERS,

              Defendant.

------------------------------x
                                         April 7, 2017
                                         10:30 a.m.

Before:

                    HON. P. KEVIN CASTEL,

                                         District Judge

                        APPEARANCES

JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
BY:  DANIEL S. GOLDMAN
     BROOKE E. CUCINELLA
     MICHAEL FERRARA
         Assistant United States Attorneys

KRAMER LEVIN NAFTALIS & FRANKEL, LLP
     Attorneys for Defendant
BY:  BARRY H. BERKE
     PAUL H. SCHOEMAN
     ANDREW J. ESTES
     MICHELLE BEN-DAVID
          -and-
WRIGHT STANISH & WINCKLER
BY:  RICHARD WRIGHT

          - also present -

SA Edmund Rom
SA Nicholas Anderson, Federal Bureau of Investigation
Holly Meister
Sarah Pyun, Government Paralegal Specialists
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1              (In open court; jury not present)

2              THE COURT:  Good morning, ladies and gentlemen.  I
3    thought it prudent to get you together -- please be seated.
4    Nothing of any significance, but there were oral requests made
5    by the jurors to the CSO communicated to the deputy for
6    additional copies of the jury instruction and I believe
7    highlighters and Post-its.  And the highlighters and Post-its
8    were given to the jurors; is that correct, madam deputy?

9              THE DEPUTY CLERK:  Yes.

10             THE COURT:  The additional copies of the jury
11   instructions have not been, and there is a note which has been
12   marked as Court Exhibit 19.  It says:  Requested slash received
13   posted, P-O-S-T-E-D, highlighters.  Then it says calendar 2012,
14   2013 request.

15             The Court has printed and will mark as Court Exhibits
16   20 and 21, 20 and 21 calendar pages downloaded from a website
17   called timeanddate.com and I'll have counsel take a look at it.

18             And I propose to call in the jury, I propose to call
19   in the jury -- and take a look at Exhibits 20 and 21 -- and
20   give them those items and remind them that any future requests
21   must be in writing and must be in a note signed by the
22   foreperson, which this note is not.  I'm just doing this
23   because this is early in the process, and we might as well have
24   some good order to the whole thing.

25             Any objections from anyone?

1          MR. GOLDMAN:  No.
2          THE COURT:  Bring our jurors in, please.
3          Do you have the extra copies of the jury instructions?
4    Where are they.  We're going to send five in.
5          I understand they wanted to know about marking up the
6    exhibits.  And I'm going to indicate that they should use
7    Post-its rather than marking them.
8          (Jury present.  Time noted 10:55 a.m.)
9          THE COURT:  Good morning, ladies and gentlemen.  Good
10   to see you.  A couple of just really housekeeping matters.
11   Will the foreperson please identify themselves?  Hi.
12         THE FOREPERSON:  Hello.
13         THE COURT:  So, have a seat.  Have a seat.  This is
14   the rule that will follow.  If you as a jury need anything, the
15   way to do it is do it in a note, and it should be signed and
16   dated by you as the foreperson.
17         THE FOREPERSON:  Okay.
18         THE COURT:  And then we have good order.
19         You know.  You've been through this trial, we do
20   everything according to established procedure, and that's how
21   we do it.
22         So, there was a request for Post-it notes and
23   highlighters, which I understand were brought in to you.  There
24   was a request for additional copies of the jury instructions,
25   which we are now going to give you five additional sets.

1   You'll let me know if that's enough. If it's not enough you'll
2   send me another note.
3           We're going to give you more Post-it notes because I
4   orally learned I think from a communication from the deputy
5   marshal to my deputy clerk that you wanted to know if you could
6   mark the exhibits received into evidence with a highlighter. I
7   request that you use sticky tabs, rather than marking the
8   exhibits which have been received into evidence. And at the
9   end of your deliberations, I'll probably ask that you discard
10  the sticky notes because your deliberations are your work as a
11  jury.
12          There is a request for a calendar for 2012 and 2013.
13  And we have a 2012-2013 calendar that will come in.
14          So, madam deputy, if you at this point could give the
15  foreperson the five additional copies of the jury instruction,
16  the additional Post-it notes, and the calendar for 2012 and
17  2013, which have been marked as Court Exhibits 20 and 21.
18  That's all I have. Thank you, ladies and gentlemen. Good to
19  see you.
20          You may return to the jury room.
21          (Jury continues deliberations. Time noted 11:0 a.m.)
22          THE COURT: Thank you. If there is nothing further,
23  we are adjourned.
24          (Recess pending verdict. Time noted 11 a.m.)
25          (In open court; jury not present. Time noted 12:45

1    p.m.)
2            THE COURT:  We have three notes from the jury that
3    have been shown to counsel.
4            Exhibit 22:  May we have some poster paper if
5    available, we are running out of space on the board.
6            I see we have a poster here, poster board here, and we
7    need to get a couple of markers.  Any objection to that going
8    into the jury room?
9            MR. GOLDMAN:  No.
10           MR. BERKE:  No, your Honor.
11           THE COURT:  So, then there's note 23, and I don't know
12   whether 23 and 24 are interrelated.  Counsel will tell me.  It
13   says:  We are looking for the phone records in 23 here and they
14   seem to be on a disc.  How can we view that?
15           And then 24 says:  We are having technical
16   difficulties, we aren't able to play Government Exhibit 1000
17   through 1500 on the computer.  If we could have some help,
18   thank you.
19           What do you think 23 relates to and is it the same as
20   24?
21           MS. CUCINELLA:  Likely, your Honor.  The computer
22   requires a password.  So it's unclear from the notes if they
23   figured out -- all of it was included with the laptop, but once
24   you sign in with the password, then the discs have passwords
25   written on the bottom of them.  So, they may just need that

1    explained to them.  We were talking with defense --
2              THE COURT:  You have to back me up here.  Let's get
3    this into really simple baby talk.  So, there was a piece of
4    paper that went in with the laptop.  Is that what you're
5    telling me?
6              MR. FERRARA:  Your Honor, it's taped onto the laptop.
7              THE COURT:  That's what I need to know.
8              MR. FERRARA:  There is a little sticky note taped on
9    there with a user name and password.  There is a couple places
10   they might be getting tripped up trying to use the password.  I
11   looked at it with defense counsel yesterday evening.  Once
12   you -- the password is unfortunately sort of complicated, just
13   a long string of numbers and letters.
14             THE COURT:  Don't tell me, I don't want to know.
15             MR. FERRARA:  Fair enough.  Once they sort boot it up,
16   there are some prompts and you have to know to cancel them, for
17   instance.  And so, they might just be looking at it thinking
18   should we click this or click that.  And also, what
19   Ms. Cucinella was saying --
20             THE COURT:  You tell me should they click this or
21   should they click that.
22             MR. FERRARA:  We thought if that is the problem,
23   simply they're having trouble logging into the computer, we
24   could do that for them and send the computer back in ready to
25   go.  If they're having a problem with the disc itself, we could

1   of course try to explain -- the Court could explain to them
2   perhaps what to do, or if there is a technical problem with the
3   disc.
4              THE COURT:  Would there be a problem in -- I don't
5   know how else to do this.  There are probably a couple of ways,
6   but bring the jury in, have them bring the computer in,
7   explaining what you just told me and say I can have one of the
8   attorneys log you in right now, if that would help.
9              MR. BERKE:  Your Honor, could I just suggest -- one of
10  things we talked about just in terms of who is helping, given
11  the sensitivity of their deliberations.  If we simply gave them
12  a note and asked them to give us back the computer and disc, we
13  would send right back in the computer turned on, the disc in,
14  password added and --
15             THE COURT:  Is it one disc or several?
16             MR. FERRARA:  It is multiple discs.  We could get them
17  started and we could at least get them started.  And to
18  Mr. Berke's point, your Honor, maybe your Honor could explain
19  to them that we've put in the password --
20             THE COURT:  The discs have passwords on them?
21             MR. FERRARA:  Yes.
22             THE COURT:  Where are they?
23             MR. FERRARA:  Written on the sleeve of the disc.  When
24  they take the disc out, they would have the password in their
25  other hand.

1           THE COURT:  I'm missing even words like "sleeves."  Is
2    it a paper sleeve, a plastic sleeve?
3           MR. FERRARA:  Let me explain that and let me amend my
4    earlier answer.  I'm now told by my colleagues that phone
5    records are on one disc, so we could load it up and they'll get
6    most of what they're looking for.
7           To your Honor's question, sometimes when your Honor
8    probably has a disc it's just a paper sort of sleeve, it's got
9    like a -- you can see inside a plastic window and on that is
10   written the password.
11          THE COURT:  Written on the paper on the outside?
12          MR. FERRARA:  Yes, that's right.
13          MR. BERKE:  So I think, your Honor, just to be clear,
14   if the parties had the computer, we would open it up, we would
15   put in the passwords, we'd get them to the point where all they
16   would have to do is either just put in a disc and type in the
17   password that's on the sleeve, and they would be good to go.
18          THE COURT:  So why don't I ask them to come in with
19   the computer.  All right.
20          MR. BERKE:  The only thing I would ask --
21          THE COURT:  Bring the jurors in with the computer,
22   with their computer.
23          Yes, one moment though.  Just pause for a second.
24          MR. BERKE:  I would ask rather than us turn it on with
25   them here --

1           THE COURT:  I got it.  I got your point.

2           MR. BERKE:  I'm sorry, thank you.

3           THE COURT:  I got your point.  Bring the jury in with

4    the laptop.

5           (Jury present.  Time noted 12:50 p.m.)

6           THE COURT:  Madam deputy, if you can collect the

7    laptop from the foreperson, thank you.

8           THE FOREPERSON:  The disc is inside.

9           THE COURT:  Hello everybody.  Hi.  I have your three

10   notes.  We have poster paper over there and an easel.  We'll

11   have that brought in by the deputy marshal.

12          Madam deputy, if you could give the marshal some magic

13   markers because I don't think the whiteboard markers will work

14   on that, so we'll get you some regular markers and that easel.

15          With regard to the laptop, I thank you for bringing it

16   in.  We're going to get this up and running.  I'm going to say

17   a couple of things about what I understand and then you

18   probably know more about this than I do.  So, I'm just going to

19   tell you what I understand.  There is of course, see I told you

20   I'm not the right guy for this.  But anyway, here we go.  Now,

21   you see that there is in the laptop a login user name.

22          THE FOREPERSON:  We got that.

23          THE COURT:  It looks like a very, very long one.  And

24   a password.  Okay.  And that has to be logged in, there may be

25   some problems as to when you get to the first screen etc., etc.

1   I'm told with regard to the discs, that there is also a
2   password that relates to the disc.  Now, is the disc in here?
3            THE FOREPERSON:  Yes, it's inside the computer.
4            THE COURT:  All right.  So what we're going to do is
5   get this working and then the deputy marshal is going to bring
6   it in to you, and we'll see how that goes.  All right?  And
7   you'll let me know if you need something else.  All right?  So
8   let's do that.
9            You can return to the jury room and we'll get the
10  deputy marshal the easel, etc.
11           (Jury continues deliberations.  Time noted 12:55 p.m.)
12           THE COURT:  Now, it seems the password is very
13  straightforward and nothing secretive about that.  It is the
14  user name that is the problem.  The multicharacter.  It looks
15  like a government-type user name.
16           MR. BERKE:  Your Honor, so you'll feel safe, we're
17  having all the younger people do it.
18           (Pause)
19           MS. CUCINELLA:  It's ready to go.
20           THE COURT:  Show it to Mr. Berke.
21           MR. SCHOEMAN:  I got it.
22           THE COURT:  Mr. Schoeman.
23           MR. BERKE:  Good, thank you.
24           THE COURT:  If you can hand that to my deputy clerk
25  who will hand that to the deputy marshal to go into the jury

1    room.
2            My deputy was indicating that my law clerk assisted in
3    getting the easel into the jury room.
4            THE COURT:  If there is nothing further, then we're
5    adjourned.
6            MS. CUCINELLA:  Thank you, Judge.
7            (Recess pending verdict.  Time noted 1 p.m.)
8            (In open court; jury not present.  Time noted 2 p.m.)
9            THE COURT:  I have a note from the jury which has been
10   marked as Court Exhibit 25:  Your Honor, we have reviewed the
11   evidence and we are ready to deliver our verdict.  Signed by
12   the foreperson.  That was followed by Court Exhibit 26, which
13   is an envelope containing the jury's verdict.
14           I will have the jury brought in at this time.  Please
15   stand for the jury.
16           (Jury present.  Time noted 2:10 p.m.)
17           THE COURT:  Madam foreperson, I understand the jury
18   has reached a verdict.  Is that correct?
19           THE FOREPERSON:  Yes.
20           THE COURT:  Is it unanimous?
21           THE FOREPERSON:  Yes.
22           THE COURT:  It's contained in this envelope?
23           THE FOREPERSON:  Yes.
24           THE COURT:  All right.  It's signed and dated.
25           Madam deputy, I would ask that you hand this to the

1   foreperson and take the verdict.  If you would please stand.
2   One moment, please now.
3           THE DEPUTY CLERK:  As to Count One, conspiracy to
4   commit securities fraud, guilty or not guilty?
5           THE FOREPERSON:  Guilty.
6           THE DEPUTY CLERK:  As to Count Two, conspiracy to
7   commit wire fraud, guilty or not guilty?
8           THE FOREPERSON:  Guilty.
9           THE DEPUTY CLERK:  Count Three, security fraud in
10  connection with Dean Foods Co. on May 8, 9, 2012, guilty or not
11  guilty?
12          THE FOREPERSON:  Guilty.
13          THE DEPUTY CLERK:  Count Four, securities fraud in
14  connection with Dean Foods Co. on July 13, 17, 18, 23, 24 and
15  31, 2012, guilty or not guilty?
16          THE FOREPERSON:  Guilty.
17          THE DEPUTY CLERK:  Count Five, securities fraud in
18  connection with Dean Foods Co. on September 17, 18, 19, and
19  October 9 and 11, 2012, guilty or not guilty?
20          THE FOREPERSON:  Guilty.
21          THE DEPUTY CLERK:  Count Six, securities fraud in
22  connection with Darden Restaurants, Inc. on August 20 and 21,
23  2013, guilty or not guilty?
24          THE FOREPERSON:  Guilty.
25          THE DEPUTY CLERK:  Count Seven, wire fraud in

1  connection with Dean Foods Co. on May 8 and 9, 2012, guilty or
2  not guilty?
3              THE FOREPERSON:  Guilty.
4              THE DEPUTY CLERK:  Count Eight, wire fraud in
5  connection with Dean Foods Co. on July 13, 17, 18, 23, 24 and
6  31, 2012, guilty or not guilty?
7              THE FOREPERSON:  Guilty.
8              THE DEPUTY CLERK:  Count Nine, wire fraud in
9  connection with Dean Foods Co. on September 17, 18, 19, and
10 October 9 and 11, 2012, guilty or not guilty?
11             THE FOREPERSON:  Guilty.
12             THE DEPUTY CLERK:  Count 10, wire fraud in connection
13 with Darden Restaurants, Inc. on August 20 and 21, 2013, guilty
14 or not guilty?
15             THE FOREPERSON:  Guilty.
16             THE COURT:  Madam deputy, please poll the jury.  You
17 may be seated and retrieve the verdict sheet from the
18 foreperson who may be seated now.
19             (Jury polled; each juror answers in the affirmative)
20             THE DEPUTY CLERK:  The jury has been polled.
21             THE COURT:  Any objection to my discharging the jury?
22             MR. GOLDMAN:  Not from the government, your Honor.
23             MR. BERKE:  No, your Honor.
24             THE COURT:  All right.
25             Ladies and gentlemen, everything I'm going to say to

you I would say to you even if your verdict had been different than the one that you returned.  I said this once before during the trial, and I'm going to say it again.

I stand in awe of your service.  You're total strangers to one another or you started that way on March 13, 2017.  You came from different walks of life, different backgrounds, different cultures, different circumstances.  Many of you could have lived all your years on the planet and never have met one another.

And yet, we have this wonderful system where you come together and you listened to the evidence in a case where you have nothing to do with it, you're not at all involved, you are supposed to be indifferent and open minded, and you come together and unanimously reach a verdict.

I repeat myself, but that's a process that I'm in awe of.

This is not a system that anyone alive today created, it's been handed down to us.  And people who live in different countries, where things are done differently, don't have this system.  Because you know, and I know, that if this process were left to a man or woman who wore a black robe, there would always be a question in people's mind, who was that person? Who appointed them?  What was their life before they became a judge?  What ax do they have to grind?  There would always be somebody who would have hesitations about the reliability of

1     the outcome in that circumstance.

2              The administration of justice, whether by a judge or
3     by a jury, is a human enterprise.  I recognize that.  But, you
4     come together and you do your honest level best.  And it's
5     obvious to me that you worked very hard in this case.

6              Now, I want to tell you about a person who served as a
7     judge on this court, he became a judge about the time I was
8     born, so it was a long time ago.  And he had a very strange and
9     odd custom that people thought was peculiar.  He would say at
10    the end of a jury trial to the jurors, I will not thank you for
11    your service.  And people would say, well, that's an odd thing
12    to say.  And then he would go on to explain because that
13    cheapens what you have done.  You didn't come here to do me a
14    favor or to do anyone in this courtroom a favor for which you
15    should be thanked.  You have fulfilled one of the highest
16    duties and obligations of citizenship in this country.  You
17    have served and you have served well.

18             That's what I say to you.  And I congratulate you on
19    completing your service.

20             I have a couple of other things to say to you.  Number
21    one, as I promised you, at the end of the case, you're free to
22    discuss the case with anybody you want, or with no one.  One
23    thing that I have found from other people who have served as
24    jurors, is that they're perfectly willing to tell people what
25    they saw and observed in this courtroom, what they heard, what

they listened to, and maybe even tell their families about the wonderful people who they served with on the jury.  But they hold to themselves forever what was said between and among the jurors in the process of deliberating the case.  They view it as something private, and sacred to the members of the jury with whom they served.  That's a personal decision you have to reach, but I just tell you that.

The other thing I want to do is to ask you for a favor.  We're coming up on holidays, Passover and Easter.  Then the weather's going to get warm, and we're going to have barbecues, and it's going to come to pass that you're going to be at an event, maybe with your neighbors, maybe with your cousins, maybe with your friends, and somebody is going to tell you how they plan to beat jury service or how they beat jury service, and they'll probably say this to you because you'll tell them I was just on a jury.  That's how it's going to come up in conversation.

I don't want you to be mean to anybody.  But, if they do that, please politely let them know -- think of me -- and politely let them know that you don't find that one bit funny.  That's no different than saying I cheated on my tax returns, or I cheated in some other respect, or I violated the law in some respect.  There is nothing amusing about that.  Because now you know how important jury service is to the operation of our nation.

1      With that, ladies and gentlemen, you are discharged.
2 You may return to the jury room and resume your lives.  As we
3 promised, Flo will telephone those who were excused from the
4 jury for one reason or another, and tell them that the verdict
5 has been reached in the case.
6      Ladies and gentlemen, it may come to pass that we'll
7 pass each other on the street or in a subway or at some
8 location that I can't even imagine now.  If that should come to
9 pass, I hope you'll remind me of when and how we first met.
10 Ladies and gentlemen, you are discharged.
11      A JUROR:  It was an honor, sir.
12      (Jury dismissed)
13      THE COURT:  Applications?
14      MR. GOLDMAN:  Your Honor, we would move to amend the
15 defendant's bail conditions pursuant to Title 18, United States
16 Code, 3143.  We would recommend that he placed on home
17 detention with electronic monitoring in the district of his
18 choice, and that he be allowed only in that district and the
19 Southern District of New York, that he be no longer permitted
20 to use his private plane for any travel.  And I think that
21 pretty much sums it up.  Happy to explain our rationale if the
22 Court wants.
23      THE COURT:  Mr. Berke.
24      MR. BERKE:  Your Honor, if I may.  Mr. Walters has
25 complied with all his bail conditions.  He has reported to

1	pretrial services exactly as required, he's told them about all
2	his comings and goings on a regular basis, religious basis,
3	he's copied them.  He, to the extent he has flown, he has
4	complied with all requests about his plans to travel, including
5	copying them with his itinerary, and has always complied.
6	There has been no issues.  He's been in court exactly as he
7	should.
8	          Your Honor, we would ask you to retain the same bail
9	conditions.  Obviously, we have all the issues in this case and
10	the things that preceded the trial of the case which we know
11	about.  So we would ask that you continue the same bail
12	conditions that Mr. Walters has so dutifully complied with.
13	          THE COURT:  What I'm going to do is I'm going to grant
14	the application, I think it's reasonable, and I will ask that
15	you indicate which district, you can pick one, whether it is
16	the District of Nevada or if there is a different district,
17	that's going to be the district he is going to be confined to.
18	          Flo, I need a bail modification sheet.
19	          MR. BERKE:  Your Honor, we would ask for the Southern
20	District of California.  And your Honor, would your Honor
21	permit us, if we would like to submit further on this issue in
22	writing, as your Honor is modifying the conditions now?
23	          THE COURT:  Yes, that's always possible.  It's also
24	possible, for example, if there was some reason to do some
25	travel elsewhere, that would be on a per-event basis.  You

would apply.

MR. BERKE:  Thank you, your Honor.

Your Honor, can we make one application about the return trip?

THE COURT:  Yes.

MR. BERKE:  That is may Mr. Walters return with his family on his plane back to California?

THE COURT:  Any objection?

MR. GOLDMAN:  Yes, your Honor.  We object.  The situation is very different now.

THE COURT:  I'm going to allow it.  That's to the Southern District of California, correct.

MR. BERKE:  Exactly, your Honor.  Thank you.

THE COURT:  When will that be?

MR. BERKE:  Your Honor, that would either be today or tomorrow.

THE COURT:  Okay.  Thank you.  Anything else from the government?  I need to set a sentencing date.  And we'll pick something about six weeks out.  Let's set it for -- my deputy advises me it will have to be longer than that for the PSR to be prepared.

I'm going to set it for July 14, at 11 a.m.  Anything further from the government?

MR. GOLDMAN:  No, your Honor.

THE COURT:  From the defendant?

1             MR. BERKE:  No, your Honor.
2             THE COURT:  Thank you all very much.
3                              o0o