UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                        16-cr-338 (PKC)

      -against-                    MEMORANDUM
                                  <u>AND ORDER</u>

WILLIAM WALTERS,

                    Defendant.
-----------------------------------------------------------x
CASTEL, U.S.D.J.

        Defendant William Walters moves the Court to set aside a jury's verdict and grant him a new trial pursuant to Rule 33, Fed. R. Crim. P. On April 7, 2017, a jury found Walters guilty on all counts of the indictment charging four counts of securities fraud, four counts of wire fraud, one count of conspiracy to commit securities fraud, and one count of conspiracy to commit wire fraud. At trial, the government presented voluminous documentary evidence, including phone and trading records, as well as testimony from various witnesses, including Tom Davis, a former member of the board of directors of Dean Foods, Co. ("Dean Foods"), and a government cooperator. On May 5, 2017, Walters moved for a new trial, arguing that the government knowingly introduced, and then failed to correct, material perjured testimony by Davis. For reasons to be explained, the motion is denied.

BACKGROUND

        Numerous witnesses testified during the government's case, including multiple brokers who worked with Walters at various times relevant to the indictment, the former CEO and chairman of the board of Dean Foods, and another former CEO of Dean Foods. Trading data and phone records were offered by the government and admitted into evidence. This

testimony and documentary evidence convincingly demonstrated a pattern: members of the Dean Foods Board of Directors, including Davis, would receive material, nonpublic information, closely followed by a phone call from Davis to Walters, closely followed by Walters initiating purchases or sales of Dean Foods stock consistent with the material, non-public information that had been provided to members of the board. Documentary evidence demonstrated that Walters extended approximately $1 million in loans to Davis, which Davis never fully repaid. Taken as a whole, this circumstantial evidence convincingly demonstrated an insider tipping scheme between Walters and Davis.

Tom Davis, the former board member and then chairman of the board of Dean Foods, testified over five days regarding an insider trading scheme whereby he tipped Walters with material, non-public information related to Dean Foods. Davis testified that he received approximately $1 million in loans from Walters, a substantial portion of which were never paid back. This testimony corroborated the testimony of the other witnesses and the documentary evidence. Davis testified that he had provided Walters with material, non-public information regarding Dean Foods since at latest 2008. (Tr. at 674.) Davis, a sports gambling enthusiast, testified that in the beginning his motivations for providing Walters with the information were not thoroughly thought out, but that he was "enamored" with Walters, a famous sports gambler, and "wanted to develop a relationship with him." (Tr. at 602-03, 766.) He traveled to Kentucky and California to golf with Walters. (Tr. 692-93, 717-19.) Davis testified that on two occasions he asked Walters for loans, which Walters extended and Davis never fully repaid. (Tr. 741-45, 757-58, 798-801.) Davis also testified that he provided material, non-public information regarding Darden Restaurants, Inc. to Walters in 2013. (Tr. 880, 886-87).

Davis testified that in 2011 Walters provided him with a disposable cell phone, or "burner" phone, that Davis nicknamed the "bat phone," to be used for communications related to Dean Foods. (Tr. 834-36.) Davis testified that he disposed of the "bat phone" in a body of water near his home shortly after being contacted by the FBI in May 2014. (Tr. 899-901.) The "bat phone" was never recovered. (Tr. 1581.)

Davis admitted in his testimony under oath that while he remembered certain events clearly, he did not recall the details of all his communications and interactions with Walters that related to Dean Foods. (Tr. 602, 616, 630-31, 651.) The government reiterated this in its summation to the jury. (Tr. 2755-56, 2921.)

On cross-examination, Davis' veracity both on the stand and in his prior proffers to the government was repeatedly challenged by the defendant. (See e.g., Tr. 977 ("That was a lie, sir, wasn't it?"); Tr. at 1045 ("I ask you again, sir, that was a lie, wasn't it, sir?"); Tr. 981 ("Are you being as truthful about that as everything else in your testimony?") Accusing Davis of fabricating his story, especially his description of his receipt and use of the "bat phone," factored prominently in both the defendant's opening and closing arguments. (Tr. 33-35, 2848-52, 2856-60.)

LEGAL STANDARD

Rule 33, Fed. R. Crim. P., provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33(a), Fed R. Crim. P. Although granting such a motion is within the court's discretion, "that discretion should be exercised sparingly." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). "[M]otions for a new trial are disfavored in [the Second] Circuit." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995). "The ultimate test is whether letting a guilty verdict

stand would be a manifest injustice . . . . There must be a real concern that an innocent person may have been convicted." United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005) (internal quotation marks omitted; omissions in original).

"In order to be granted a new trial on the ground that a witness committed perjury, the defendant must show that (i) the witness actually committed perjury; (ii) the alleged perjury was material; (iii) the government knew or should have known of the perjury at [the] time of trial; and (iv) the perjured testimony remained undisclosed during trial." United States v. Cromitie, 727 F.3d 194, 221 (2d Cir. 2013) (alteration in original).

DISCUSSION

I. Defendant has Presented Insufficient Evidence that Davis Committed Perjury.

"A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory. Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001) (internal citation omitted) (upholding denial of Rule 33 motion for a new trial).

Defendant argues that Davis committed perjury when he testified that "he used the 'bat phone' to provide Mr. Walters with information in late 2011 and early 2012." (Def.'s Mem. in Supp., May 5, 2017, Dkt. 170 at 19.) Defendant's theory is that Davis could not have been using the "bat phone" during this time period, because "the meeting where Mr. Davis supposedly received the 'bat phone' could have occurred only on December 18, 2012." (Id.) Defendant bases this argument on several pieces of evidence presented at trial. Davis testified that he was given the phone by Walters in the parking lot of Signature Aviation at Love Field in

Dallas when Walters had been in town "to meet with some banks," and was accompanied by Mike Luce and Susan Walters. (Id. at 4-5; Tr. 834, 1342.) Davis thought he had seen Walters' private plane, having noted the initials on the tail, and remembered that the weather had been good on that day. (Def.'s Mem. in Supp. at 4-6; Tr. 1352.)

Flight logs showed that Mike Luce, Susan Walters, and William Walters arrived at Love Field on December 18, 2012 for the purpose of meeting with a bank. (Def.'s Mem. in Supp. at 5-6.) Evidence was presented that the temperature at Love Field on that day was 80 degrees Fahrenheit and that "Mr. Davis' cell phone called Mr. Walters' cell phone twice on December 18, 2012, with a cell location in or about Dallas Love Field Airport." (Id. at 5 (internal quotation marks omitted).) Defendant contends that this meeting conforms perfectly to Davis' description of the circumstances surrounding his meeting with Walters at which he received the "bat phone," and that he could only be describing this meeting. (Def.'s Mem. in Supp. at 5-6.)

From this apparent inconsistency between Davis' testimony and the documentary evidence, defendant draws the conclusion that Davis' testimony at trial accurately reflected the surrounding circumstances of his meeting with Walters on the day he received the "bat phone," but inaccurately reflected the approximate date on which he received the phone. The Court disagrees with defendant's conclusion, and finds that, assuming there is a genuine irreconcilable inconsistency between Davis' testimony and the documentary evidence regarding the surrounding circumstances and approximate date on which Davis received the "bat phone" from Walters, it is more likely that Davis testified accurately that he received the phone from Walters in 2011, and that he misremembered the precise circumstances under which he received the "bat phone," or mistakenly confused the meeting at which he received the "bat phone" with a later

meeting with Walters at Love Field. While Davis did indicate that his memory of the circumstances under which he received the phone were clear, (Tr. 1352), throughout his testimony he indicated trouble recalling the specifics of his interactions with Walters, (Tr. 602, 616, 630-31, 651.)

Even if Davis testified accurately regarding receiving the "bat phone" in an airport parking lot and that Mike Luce and Susan Walters were with the defendant in Dallas on the occasion of this meeting, the Court would still not be convinced that Davis was committing perjury when he testified that he received the phone in 2011. Defendant insists that testimony from the pilot of defendant's private plane, as well as documentary evidence including flight logs and cell tower data, demonstrate that the only date on which Davis could have received the "bat phone" was December 18, 2012. (Def.'s Mem. in Supp. 5-6.) However, Walter's movements were not exhaustively catalogued. None of the evidence presented shows that it was impossible, or even unlikely, that Walters met Davis at an airport in Dallas on a different date.

The defendant's contention that a Verizon Wireless "prepay" phone activated in November 2012 with the number 214-883-9924 was, in fact, the "bat phone," is pure speculation. (Id. at 8-9.) The fact that on the day before defendant sold a significant number of shares of Dean Foods stock this number called defendant shortly after Davis' primary cell phone placed a brief call to defendant's primary cell phone, (id. at 9-10), without a pattern of such calls, proves nothing.

II.  Any Perjured Testimony was not Material.

"[P]erjury is material if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Cromitie, 727 F.3d at 221-22 (internal quotation marks omitted).

The government presented overwhelming circumstantial evidence of Walters' guilt, including trading records and phone records (i.e., not from the "bat phone") showing calls between Davis and Walters shortly after the Dean Foods Board of Directors learned of information material to Dean Foods' stock price and shortly before Walters either bought or sold Dean Foods stock consistent with this information, as well as documentation of the loans Walters made to Davis. Davis' testimony simply corroborated this pattern that strongly supported the conclusion that Walters received and traded upon material non-public information provided by Davis. Because a reasonable jury would likely have convicted even if Davis had not testified, his testimony was not material.

III. <u>The Government Lacked Knowledge of any Perjured Testimony.</u>

As noted above, Walters has failed to establish that Davis' testimony was perjured. However, even if such perjury were proven, none of the evidence presented suggests that the government knew, or should have known, of the perjury. Defendant suggests that it is indisputably obvious that Davis' memory regarding the circumstances surrounding his receipt of the "bat phone" was perfectly sound, and that the "bat phone" transaction thus must have occurred on December 18, 2012, when this theory is rather a less likely possibility among many possibilities. If Davis was lying, there is no reason to believe that the government believed, as Walters does, that Walters' December 18, 2012 trip to Dallas was Walters' only conceivable opportunity to provide Davis with the "bat phone" consistent with Davis' recollection. There is also no reason to suspect that the government believed Davis to be lying rather than simply misremembering events that occurred years in the past.

IV. <u>The Government Acknowledged Inconsistencies in Davis' Testimony.</u>

The government acknowledged in its summation and rebuttal that Davis' testimony regarding receiving the "bat phone" was not completely consistent with the rest of the evidence presented in the case. (Tr. 2755-56, 2921.) Instead, the government pointed the jury to the weightier evidence suggesting that Davis had received the "bat phone" in late 2011 or early 2012. (Tr. 2755-56.) Walters vigorously cross-examined Davis, illustrating the inconsistencies between Davis' testimony regarding the circumstances surrounding his receipt of the "bat phone" and the documentary evidence. Defendant highlighted this evidence for the jury in closing, presenting the same arguments that he presents here. Throughout the trial defense counsel referred to Davis as a liar, and argued to the jury that Davis was knowingly testifying falsely to serve his own ends. If Davis' testimony was a lie, defendant cannot argue that these lies were not disclosed.

CONCLUSION

Ultimately, this is not a case where there is "a real concern that an innocent person may have been convicted." <u>United States v. Cacace</u>, 796 F.3d 176, 191 (2d Cir. 2015). Because Walters has failed to show that the government knowingly presented materially false testimony, defendant's motion for a new trial (Dkt. No. 169) is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
July 6, 2017